### HUTCHESON, receiver, *v.* HODNETT *et al.* (Three cases.)

A trustee in possession of land, charged with the duty of managing and controlling it and using the income therefrom for the support, maintenance, and education of the beneficiaries of the trust, may grant leases of the same, provided the time fixed for the duration of the leases is not unreasonable, and the amount stipulated to be paid as rental is a reasonably fair compensation for the use of the land for the time specified in the leases, they being otherwise reasonable in their terms. Where such leases have been executed, a court of equity will not, in the exercise of its supervisory powers over trusts and trustees, set aside the leases, but will uphold and confirm them.

Submitted May 1, — Decided July 22, 1902.

Exceptions to auditor's report. Before Judge Candler. Clayton superior court. December 30, 1901.

*F. E. Callaway* and *J. D. Bradwell,* for plaintiff.
*W. L. Watterson* and *W. M. Wright,* for defendants.

COBB, J. Hutcheson, as receiver, brought separate suits against Bennefield, Hodnett, and Melson, seeking in each case to recover possession of lands held by the defendant, to recover damages for acts of waste, and to enjoin future acts of waste. The three cases, together with the case in which Hutcheson was appointed receiver, were by order of the court referred to an auditor, who was authorized to make one report in all the cases or separate reports in each, as he deemed proper. The auditor made separate reports in the three cases now under consideration, the report in each being in effect that the defendant was entitled to a decree. To these reports numerous exceptions both of law and fact were filed. The judge disallowed all of the exceptions of fact, overruled all of the exceptions of law, and entered decrees in favor of the defendants.

The receiver claimed the right to recover possession of the lands under the terms of two deeds executed by S. H. Gay, in which W. P. Archer was appointed trustee during the lifetime of his wife, Marietta Archer, to manage certain lands for the benefit of his wife and children. The defendants claimed the right to remain in possession of the lands under leases from W. P. Archer as trustee. Marietta Archer joined with her husband in the execution of all the leases, and to some of them were affixed the signatures of some of the children of Marietta Archer, though it is conceded that at the date of the leases at least three of the children were minors. The leases were for terms running from three to eight years. That portion of the first deed from S. H. Gay, above referred to, which is material to the present investigation, is as follows: " Which land I hereby give to the said Marietta Archer during her natural life, and at her death to be equally divided between the children of the said Marietta Archer living at her death. I further direct and agree that her husband, W. P. Archer, shall have full power to manage and to control said property during the life of said Marietta Archer, as he thinks best for the object of supporting, educating, taking care of, and making comfortable her and her children, and that the said W. P. Archer shall have full power to dispose of the proceeds of said lands for the purpose aforesaid, and for no other purpose; and I further direct and agree that the said W. P. Archer shall not be disturbed in the use and management of said property. That the said Archer shall not have power to sell or otherwise dispose of the said property aforesaid, without abuse to his trust; only

the proceeds, and that for the purpose aforesaid." That portion of the second deed from S. H. Gay which is material to the present discussion is as follows: "Which land I hereby give to the said Marietta Archer during her natural life, and at her death the land to be equally divided between the children of the said Marietta Archer living at her death; and should the said Marietta Archer die leaving neither child nor children, or the representatives of children, then the said land is to revert back to me or my estate as the case may be, and that the same be equally divided between my right heirs, share and share alike. And I further agree and consent that the said W. P. Archer shall control said land during the life of the said Marietta Archer, for the object and purpose of supporting and taking care of and maintaining the said Marietta Archer and her children, and the said W. P. Archer shall not be liable to the profits of said land, except for the support, education, and maintenance of his said family; and I further direct and agree that he shall not be disturbed in the use and management or control of said property so long as he uses the same for the purposes aforesaid and without abuse to his trust. That the said Archer shall not have the power to sell or otherwise dispose of said property, but only the proceeds aforesaid and for the purpose aforesaid."

It is not necessary to set forth the exact language of any of the leases under which the defendants claimed. It is sufficient to say that while some of them might be so construed as to pass no estate out of the landlord and to give only the usufruct to the tenant, still others contained language from which it would be manifest that there was an intention to create an estate for years in the tenant. For the purposes of these cases each of the instruments will be treated as a grant of an estate for years, that is, what is usually termed a lease. See Civil Code, § 3114. When so construed, the question arises whether the trustee had, under the terms of the deeds above referred to, authority to convey such an estate. It is not claimed that the leases were executed under the authority of an order of court. It must therefore be determined whether, under the terms of the deeds, there was either an express or implied power in the trustee to execute a lease of the trust property. A trustee in this State, unless expressly authorized by the instrument creating the trust, or with the voluntary consent of all the beneficiaries, has no authority to sell or convey the corpus of the trust estate,

without an order of the superior court upon a regular application made.   Civil Code, § 3172.   In the present cases the trustee is expressly prohibited from selling or otherwise disposing of the property of the trust estate; the right of disposition conferred upon the trustee in the deeds being limited simply to the income and profits arising from the trust property.   The duty imposed upon the trustee under the terms of the deeds is to so manage the property as to produce an income to be expended for the purposes of the trust, that is, for the maintenance and support of his wife and the maintenance, support, and education of his children.   Without an income the purposes of the trust can not be accomplished.   The property of the trust estate consisting of agricultural lands, and there being nothing in the deeds which requires that the lands shall be tilled directly by the trustee or under his immediate supervision, it is to be inferred that it was the intention of the creator of the trust that the trustee should have a right in his discretion to rent the lands for the purpose of making an income to carry out the purposes of the trust.   It is conceded that the trustee had the right to make contracts of rental for a term not exceeding five years, provided the contracts were not of such a character as to vest an estate in the tenant.   See, in this connection, Civil Code, § 3115.   It is contended, however, that in all cases of contracts for rental, where the term is five years or more, an estate in the land passes to the tenant, and that such contracts are in effect sales by the trustee, and invalid, under the laws of this State, when not authorized by an order of the superior court, and would be invalid in the present cases, for the reason that under the terms of the trust deeds the power to sell is expressly denied to the trustee.   Whether under a contract providing for the rent of land an estate in the land passes to the tenant, or he obtains merely the usufruct and no estate in the land, depends upon the intention of the parties; and this is true without regard to the length of the term.   While under the code contracts of rental for terms of less than five years will generally be construed to give only the usufruct and to pass no estate, still such contracts may have the effect to pass an estate to the tenant where it is manifest from the instrument containing the contract that such was the intention of the parties.

An estate for years is a contract for the possession of lands or tenements for some determinate period, and this period may be less

than a year, as a certain number of months, or even weeks. 11 Am. & Eng. Enc. L. (2d ed.) 380. A tenant for years is never seized of the lands leased. He acquires a right of entry upon the land, and when he enters he is possessed, not of the land, but of a term for years, while the seisin of the freehold remains in the lessor, and the lessee's possession is the possession of him who has the freehold. 1 Wash. Real Prop. (6th ed.) § 612. A lease for a term of years is not a freehold estate, but a chattel. *Field* v. *Howell*, 6 *Ga.* 423. There is nothing in either of the deeds conferring upon the trustee the right to make either a contract of rental, giving to the tenant the mere use of the property and passing to him no estate therein, or a lease of the premises, under which the tenant would become possessed of an estate for years. It is conceded that the trustee must, from the necessity of the case, have the power to make contracts of rental, at least for terms not exceeding five years. Keeping in mind that the purpose of the trust is the maintenance and support of the wife and the maintenance and education of the children, would not the trustee, in the exercise of a sound discretion, be authorized to execute leases in order to secure an income payable from year to year, or to secure a gross sum payable at once, to be used for the purposes of the trust, when in his judgment it is to the interest of those whom he represents that this character of contract is to be preferred to contracts of rental made from year to year, or to contracts of rental for a short period of time not exceeding five years? While the law of this State prohibits a trustee from selling the corpus of the trust property, that is, from divesting himself of the title to the estate, there is nothing in the law of this State which prohibits one, who by the terms of the trust is required to manage and control the property in such a way as to produce a given result, from dealing with the same in any way which may be necessary for this purpose, which does not have the effect to pass out of him the legal title to the estate or to pass to another the interest of those he represents in the corpus of the property. When a trustee is appointed to manage and control farm lands, it is to be presumed that it was the intention of the creator of the trust that the lands should be managed and controlled in the way that such lands are usually managed by owners of property of that character. It is not unusual in this State for an owner of farm lands to grant a lease of the same for a term of years, and a trustee

would have the implied power to grant such a lease, where there was nothing in the instrument creating the trust negativing this power. Mr. Perry in his work on Trusts (2d ed. § 528) says: " When trustees are charged with the payment of annuities, debts, or legacies, or any other sums out of the estate, but have no power of sale, they have an implied power of leasing upon the ordinary terms or custom of the State or town in which the land is situated. If the trust consists of farming lands, trustees can grant ordinary farming leases; if of houses in a city, they can grant the ordinary leases of such property." Mr. Beach says: " The power to lease the trust estate belongs to the general official powers of a trustee where there is a general control of the property. And where this is necessary, in order to raise money for the preservation of trust property, or for the support of dependent beneficiaries, it becomes his duty to lease the estate." 2 Beach, Trusts & Trustees, § 446. See also 1 Lewin, Trusts, *595 ; Underhill, Trusts & Trustees (Am. ed.), 347 ; Flint, Trusts & Trustees, § 192 ; Loring's Trustee's Handbook, 61 ; Middleton v. Dodswell, 13 Ves. Jr. 268. While a trustee to manage and control property, when one of the objects of the trust is to raise an income and expend it for given purposes, has the implied power to lease the trust estate, this power is not an unlimited power. The lease can not extend beyond the time the trusteeship is to last, and can not in all cases extend even to the end of the trusteeship; the term of the lease being dependent upon the character of the property, the purposes of the trust, the custom of the place in reference to the management of like property, and the conditions surrounding and emergencies confronting the trustee in reference to the management of the property at the time the lease is executed. All such leases are in any event subject to the supervisory control of a court of equity. If a lease granted by a trustee is, according to the custom of the place, reasonable and usual as to its duration, and the amount of rental stipulated to be paid is, under all the circumstances of the trustee at the time of the execution of the lease, whether payable in installments annual or otherwise, or in a gross sum paid down, fair and adequate compensation, such a lease will be upheld as within the legitimate power of the trustee. On the other hand, if under all the circumstances the duration of the lease is for an unreasonable length of time, although within the period for which the trust is to continue, or

for a stipulated rental which is grossly inadequate, or for any other reason it was not to the best interest of the estate that the particular lease should have been granted, a court of equity might set aside the lease as an abuse of power on the part of the trustee; but in all such cases it would seem that if the person claiming under the lease had acted in good faith and expended money on the faith of it, the decree should protect him, so far as he could be protected consistently with the principles of equity. See Greason *v.* Keteltas,. 17 N. Y. 491. Mr. Perry says: "Trustees of lands must of course have a general power to lease them, otherwise they could obtain no income; but they must make reasonable leases. In one case a. lease for ten years was allowed. Trustees have a general power of leasing, if the lease does not exceed the quantity of estate that is in them, and is a reasonable one." 2 Perry, Trusts (5th ed.), § 484. Mr. Washburn says: "Trustees who have the legal fee in lands. may lease them to any extent, the right being incident to the legal. estate." 1 Wash. Real Prop. (6th ed.) § 629.

In Naylor *v.* Arnitt, 1 Russ. & Mylne, 501–2, s. c. 32 Rev. Rep. 254, where a testator devised lands to trustees upon trust, out of the rents and profits to pay two annuities, and subject thereto to permit ·A., and after him his wife, to receive and take the rents and profits during their respective lives; and after the decease of the survivor he devised the lands to their children, it. was held that the trustees could grant a valid lease of the lands for a term of ten years. In Wood *v.* Patteson, 10 Beav. 541, the master of the rolls held that the court could not authorize a trustee for an infant to grant a mining lease, although the legal estate is vested in the trustee, and the lease would be beneficial to the infant. While that case was clearly distinguishable from Naylor *v.* Arnitt, one involving a lease of farm lands, under the operation of which the value of the freehold would not in any way be affected, and the other a mining lease, in the operation of which the value of the freehold would necessarily be diminished, still the master of the rolls took occasion to criticise the ruling in Naylor *v.* Arnitt. In 1871, in the case of Shaw's Trusts, 12 Law Rep. (Eq. Cas.) 124, the vice-chancellor refused to authorize a trustee to execute leases of real estate for a term of ten years, declining to follow the ruling in Naylor *v.* Arnitt, and approving the criticism made upon that case by the master of the rolls in Wood *v.* Patteson. While

the case of Naylor v. Arnitt has thus been overruled in England, it has been followed in this country, and is cited with approval both by judges and law writers. See Newcomb v. Ketteltas, 19 Barb. 608, and the various works on trusts above cited. In Black v. Ligon, Harp. Eq. (S. C.) 205, the testator by a will devised lands to three trustees for the support of a charity school, which land was never to be sold or alienated. The school was to be under the direction of five trustees, to be elected every two years. It was held that the power to lease the lands was in the five trustees elected for two years, and that a lease of a portion of the property of the trust estate, consisting of land and a mill, for a term of ninety-nine years for a gross sum, without the reservation of an annual rent, was valid, and not in violation of the testator's prohibition against the alienation of the land. While this case deals with a charitable trust, at the same time a trustee appointed to administer such a trust has no more authority to lease the property than an ordinary trustee; but, on account of the peculiar character of the trust and its long continuance, a lease for a term of years which would be declared to be reasonable in point of time might in an ordinary trust be held to be altogether unreasonable as to the length of time which it had to run. In the case of Trustees v. Board of Education (Ky.), 26 S. W. 187, it was held that where one conveys land to trustees for educational purposes, with reversion to himself and heirs on a failure of trust, and after many years the buildings become dilapidated, and the trustees have no funds for repairs or for carrying on the trust, such trustees have power to lease the land for a term of years to any one agreeing to erect ample buildings thereon, and to use them solely for the purposes of the original trust. The period for which the lease granted in that case was to extend was ninety-nine years. We see no sufficient reason why a trustee, under the general powers conferred upon him by law, may not make a farm lease, provided the same is not unreasonable as to duration, is fair in its terms as to the rent to be paid, and is otherwise reasonable in its stipulations.

In the present cases the auditor found that no one of the leases was for a time that was unreasonable, unusual, or contrary to the custom of the country; that the rental to be paid, which was in some instances a gross amount to be paid at the beginning of the leases, and in other cases a sum to be paid and certain work and la-

bor to be performed upon the estate during the term of the lease, was a fair and reasonable compensation for the use of the land during the term of the lease; that the amounts to be paid had actually been paid to the trustee and had been expended by him for the benefit of the beneficiaries of the trust estate; and that the leases were entered into in good faith, and there was no fraud or collusion between the trustee and the lessees. These findings of the auditor were excepted to. The court disallowed the exceptions, and the plaintiff has assigned error in his bill of exceptions upon the judgment of the court disallowing the exceptions, but in the brief filed the questions thus made are not insisted on in this court; the only question argued, so far as this branch of the case is concerned, being as to the power of the trustee to make the leases. No other question than this was argued or insisted on in the cases against Bennefield and Hodnett. In the case against Melson it appears that Melson defended, not only upon the ground that Archer, trustee, had a right to make him a lease of the premises, but also upon the ground that the plaintiffs in the case in which the receiver was appointed had, prior to the bringing of that suit, brought a suit against Archer and Melson for an accounting, in which a decree was rendered that W. P. Archer was entitled to one hundred acres of land belonging to the trust estate during his natural life, and that this one hundred acres included the land leased to the defendant Melson; and that as W. P. Archer as an individual had signed the leases delivered to Melson, even if he had no authority to execute the same as trustee, the leases were valid during the life of W. P. Archer, as he was entitled to a life-estate in the land, as against Marietta Archer and her children, under the decree above referred to. The auditor found that Marietta Archer and her children were concluded by the decree in the case above referred to, and that W. P. Archer had a life-estate in the one hundred acres embraced in the leases to Melson, and that therefore the lease to Melson of this land was valid during the lifetime of Archer. Exception was taken to this finding of the auditor, but the same was overruled by the court and a decree entered in favor of Melson. In the case of *Archer* v. *Archer*, 115 *Ga.* 950, it was held that this decree was binding upon Marietta Archer and her children. That ruling is controlling here, so far as this question is concerned. Whether we treat Melson as claiming under a lease from Archer as trustee, or

under a lease from him as an individual, he is entitled to the possession of the property; and as both leases are valid, the duration of his lease is to continue to the end of the time fixed therein, provided either W. P. Archer or Marietta Archer lives that length of time. The duration of his lease is to be determined by the life of the survivor of W. P. Archer and his wife, if both die during the term fixed in the lease.

*Judgment in each case affirmed. All the Justices concurring, except Lewis, J., absent.*