JANE M. JOHNS *et al.* Appellees, *vs.* ROBERT R. MONT-. GOMERY, Trustee, Appellant.

*Opinion filed October 16, 1914.*

1. EQUITY—*court of equity has jurisdiction to modify terms of trust.* A ccurt of equity has jurisdiction to modify the terms of a trust where unforeseen conditions have arisen which require such modification in order to preserve the trust estate to beneficiaries.

2. SAME—*what facts authorize modification of terms of trust.* The terms of a trust requiring the trust estate to be held and operated for agricultural purposes is properly modified by authorizing the subdivision of the land into lots and blocks and the sale thereof, where, by reason of the growth of an adjacent city and the contemplated expensive street improvements which must be paid for by the trust estate, the entire estate will be lost to the beneficiaries unless the terms of the original trust are so modified.

APPEAL from the Circuit Court of Macon county; the Hon. WILLIAM G. COCHRAN, Judge, presiding.

OUTTEN, EWING, McCULLOUGH & WIERMAN, for appellant.

WILLIAM C. JOHNS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

In this case a bill was filed by the beneficiaries under a trust deed executed in 1860 by William Martin for the purpose of securing a modification of the terms of a trust. The trust deed conveyed the south-east quarter of section 14, township 16, range 2, east of the third principal meridian, in Macon county, Illinois, to Harvey C. Johns for the following purposes expressed in the deed:

"To receive the rents, issues and profits and proceeds annually arising out of said estate and premises, and after paying all taxes and assessments of every nature and description, proper charges on the same, and after reserving a reasonable compensation to himself for the faithful performance of the duties herein expressed, to appropriate the

balance of the rents, issues and profits in the manner following: To the support and maintenance of said Jane Johns during her lifetime and to the support and education of William C. Johns, Fannie Johns, Helen Johns, Sheridan Johns, and such other child or children, if any there be, that may be born of said Jane Johns by her husband, Harvey C. Johns, and after amply providing for the uses and purposes aforesaid, the profits, if any, shall be expended in improving the real estate and premises aforesaid in such manner as shall be deemed most beneficial to the parties interested therein by said party of the second part, but no debts shall be incurred for the improvement of said real estate for which said real estate, or the proceeds arising therefrom, is to be chargeable. Said real estate is at all times to be free and unencumbered, and the proceeds annually arising therefrom are to be appropriated to the uses hereinbefore specified in each and every year during the lifetime of said Jane Johns, and until the youngest child of said Harvey C. Johns and Jane Johns hereinbefore named or hereafter to be born shall attain the age of twenty-one years. Said Harvey C. Johns, during the continuance of the trust herein reposed, is to have the privilege of occupying said premises and real estate, but during the time of said occupancy the proceeds arising therefrom are to be disposed of as hereinbefore designated, and after the death of said Jane Johns, wife of Harvey C. Johns, and after the youngest of the children of Jane and Harvey C. Johns hereinbefore named or hereafter to be born shall arrive at the age of twenty-one years, said real estate and premises are to be divided equally among such children of said Harvey C. Johns and Jane Johns. And in case of the death of any of said children leaving issue, then the descendant or descendants of such deceased child or children shall receive the share to which their parent would be entitled if living; and if none of the children now living or hereafter to be born, of said Harvey C. Johns and Jane Johns,

shall attain the age of twenty-one years, or if all said children shall die without leaving issue, and after the death of the said Jane Johns, then said real estate shall vest in said Harvey C. Johns, if he then be living, for and during the term of his natural life, and upon the death of said Harvey C. Johns such real estate and all the premises herein granted shall revert and be re-invested in said party of the first part, his heirs or legal representatives. And it is further provided that if said Harvey C. Johns shall depart this life previous to the complete fulfillment of the trust reposed in him, then the judge of the Macon county circuit court, or if there be no such court at that time then the court having highest jurisdiction in said Macon county, shall appoint a trustee for the faithful performance of the matters and duties herein designated and will supervise the acts and doings in the premises of the trustee so appointed."

After the making of said trust deed one other child was born to Harvey C. and Jane M. Johns, and that child married and died leaving no child or children surviving her, and her husband has since died. Fannie Johns was married and died leaving one child, Harvey J. Sedgwick, who is one of the complainants in this action. All of the other children of Jane M. Johns and Harvey C. Johns, except William C. Johns, who has died since this cause was submitted, are still living and are parties to this proceeding.

In 1898, during the lifetime of Harvey C. Johns, Jane M. Johns filed a bill for the purpose of having the terms of the trust modified, and the circuit court of Macon county entered a decree granting the relief prayed for. A writ of error was sued out of this court to obtain a review of the decree, and upon a consideration of the record the decree was reversed and the cause remanded. This court having decided the merits of the controversy against the complainant, the bill was dismissed after the cause was remanded to the circuit court. The present bill relates to the same subject matter, concerns the same parties and seeks

the same relief that was prayed for in the bill in the former case. No question of *res judicata* is involved, for the reason that the circumstances of the property have materially changed since the former case was decided. Several important new facts are presented in the present case which have arisen since the former case was disposed of. On the former hearing the controlling fact relied upon for a modification of the trust deed was, that the property, by reason of its proximity to the city of Decatur, had so increased in value that it would be much to the advantage of the beneficiaries to subdivide and sell the property and invest the proceeds in some safe interest-bearing securities, but this court decided that the mere circumstance that a modification of the trust would be advantageous to the beneficiaries was not a sufficient reason to warrant a court of equity in decreeing a modification of the trust agreement contrary to the clearly expressed will of the donor. The tract of land involved in this trust at the time the deed was made was in the suburbs of the city of Decatur. At that time the best use to which it could be put was for agricultural purposes. It appears from the bill, the evidence and findings of the court, that the city of Decatur has extended its boundaries and increased in population so that at present the land in question is almost, if not totally, surrounded by the inhabited portion of the city of Decatur and is now within the city limits. It is shown that there are 637 houses and 2498 inhabitants living within two blocks of said premises, and that as a result its usefulness as a farm has decreased while its general value has materially advanced. It also appears that in its present situation the only use to which the premises can be put is for pasturage, and that the income therefrom for such purpose is wholly insufficient to defray the taxes and other necessary expenses of maintaining the premises. It also appears that the city authorities are contemplating proceedings for special street and sidewalk improvements, and for

a large sewer which will pass entirely through the tract, and other local improvements are under contemplation which will have to be paid for by special assessment or special taxation, and from the evidence it is shown that the special taxes levied upon the trust property for these various local improvements will be from $100,000 to $140,000, and that there is no source of income from which these burdens can be paid under the existing terms of the trust, and that if the trust deed is not modified the result will be the complete destruction of the trust estate and its total loss to the beneficiaries. These facts are not controverted by appellant, but, on the contrary, it is, in effect, admitted that the only method by which anything can be saved out of this trust property for the beneficiaries is by so modifying the trust deed as to permit a subdivision and sale of a portion of the property in order to meet the constantly increasing burdens that will be laid upon the premises. It further appears from the evidence, which is also undisputed, that if this trust property is platted and sold out as lots it will be worth $480,000. It further appears that by platting one-half of the 160 acres it can be sold so as to realize to the estate $250,000.

There are only two questions to be determined upon this record: First, has a court of equity jurisdiction to enter a decree modifying the terms of the trust deed; and second, if such jurisdiction exists are the facts presented by this record such as to justify the exercise of that power.

In regard to the jurisdiction of courts of chancery to direct the conversion of real estate into personal property, and *vice versa,* and to decree other modifications of trust agreements when it becomes necessary to preserve the trust estate, it may be stated as a general proposition that while the power is exercised with great caution it has become a well established rule that when the courts can see that unforeseen conditions have arisen which make it necessary, to preserve the rights of beneficiaries under trust instruments,

to change the terms of the trust, courts of equity have not hesitated to direct such necessary modifications as will preserve the trust estate for the use of the beneficiaries. The power of a court of chancery to thus modify the terms of trust instruments is sustained in this State by the following authorities: *Curtiss* v. *Brown,* 29 Ill. 201; *Voris* v. *Sloan,* 68 id. 588; *Longwith* v. *Riggs,* 123 id. 258; *Hale* v. *Hale,* 146 id. 227; *Gavin* v. *Curtin,* 171 id. 640; *Baldrige* v. *Coffey,* 184 id. 73; *Marsh* v. *Reed,* 184 id. 263; *Denegre* v. *Walker,* 214 id. 113; *Johnson* v. *Buck,* 220 id. 226; *Roberts* v. *Roberts,* 259 id. 115; *Packard* v. *Illinois Trust and Savings Bank,* 261 id. 450.

Some of the reasons which may properly impel the exercise of this jurisdiction were forcibly stated by Mr. Chief Justice Caton in *Curtiss* v. *Brown, supra,* where he said, on page 229: "The case might exist where the property was unproductive, as in this case, but where the *cestui que trust* was absolutely perishing from want or forced to the poor-house, or where the trustee could not possibly raise the means to pay the taxes upon the property and thus save it from a public sale and a total loss. Can it be said that the beneficiary of an estate which would bring in the market $100,000 should perish in the street from want or be sent to the poor-house for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required, and in such cases the court must, as far as may be, occupy the place of the party creating the trust and do with the fund what he would have dictated had he anticipated the emergency." The doctrine of this case was quoted with approval by this court in the late case of *Roberts* v. *Roberts, supra.*

The only remaining question to be considered is whether the situation presented by this record is such as to warrant the exercise of the well established jurisdiction of the court of chancery to modify the terms of a trust agreement where conditions are such as to make it necessary. We have already referred to the general situation surrounding this property and the increased burdens that the estate will be required to meet, resulting from the improvements that are under contemplation by the city of Decatur. The facts here present the alternative of modifying the trust agreement or else losing the entire trust estate. Had the donor of this trust foreseen the exigencies that have arisen since the trust deed was made, a due regard for the interest of his beneficiaries would have compelled him to make a provision for the sale of a portion of this estate in order to preserve the whole. Apparently the only means left open to the beneficiaries under this trust is to appeal to a court of equity to preserve their estate by permitting a subdivision and sale of the premises, or, in other words, to authorize a conversion of real estate into personal property. In our opinion the facts present a case calling for the interposition of a court of equity in order to preserve a trust estate which would otherwise ultimately be lost to its owners.

Appellant suggests that the decree appealed from goes farther in directing the subdivision and sale of this property than is necessary. The decree authorizes the borrowing of money and the pledging of the trust estate, or some portion thereof, in case it becomes necessary to obtain funds to meet the demands against the estate. Whether or not the modifications as made are the most advantageous is a matter about which business men might reasonably differ. The best manner in which to manage this trust property is not a legal but a business proposition. We are not prepared to say that the decree rendered is not a judicious one in view of the situation that appears in this record. We would not feel justified in substituting our judgment

for that of the trial court upon a business proposition un-less we were clearly convinced that a mistake had been made. Under all of the circumstances appearing in this record we are not disposed to find any fault with the de-cree that has been rendered.

The decree of the circuit court of Macon county will be affirmed.

*Decree affirmed.*