JAMES E. RUSSELL ET AL., TRUSTEES, *vs.* CLARA A. RUSSELL ET AL.

Third Judicial District, New Haven, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued January 23d—decided April 17th, 1929.

*James E. Russell,* with whom was *Patrick Healey,* for the plaintiffs.

No argument was made or brief filed for the defendants.

MALTBIE, J.  The first question we propose to consider concerns the authority of the trustees to cause extensive and permanent improvements upon the premises in their charge.  The plaintiffs in their brief quote from the note to 2 Perry on Trusts & Trustees (6th Ed.) § 477, a statement to the effect that American decisions show a strong tendency to modify the rule which forbids permanent and extensive improvements unless clearly authorized in the will or unless the expenditures are necessary to save the trust property from destruction or irreparable loss.  This statement hardly seems borne out by the authorities.  See *Estate of Cole,* 102 Wis. 1, 8, 78 N.W. 402; *Booth* v. *Bradford,* 114 Iowa, 562, 87 N.W. 685; *Maynard* v. *Columbus,* 150 Ky. 817, 819, 150 S.W. 1019; *In re Miller,* 62 N.J. Eq. 764, 49 Atl. 149, 67 N.J. Eq. 431, 58 Atl. 383. In England the matter is now largely governed by statute, but where it is not, it still seems true that the trustees will not be authorized to make such improvements.  *Re Lord de Tabley,* 75 Law Times Rep. 328; *In re De Teissier's Settled Estates,* L.R. (1893) 1 Ch. Div. 153.  It should be borne in mind that the question is usually not so much one of authority in

the trustees to make such improvements as of their
authority to use the capital of the estate for such
a purpose, and, so understood, the cases cited in the
note in Perry to support its text are seen to be rather
exceptions to than illustrations of a general rule; for in
*Stevens* v. *Melcher,* 152 N.Y. 551, 567, 46 N.E. 965,
authority in the trustees to invest the principal of the
fund in real estate was found in the will; in Massa-
chusetts, as pointed out in *Warren* v. *Pazolt,* 203 Mass.
328, 348, 89 N.E. 381, the general rule is that trustees
have authority to invest the funds in their possession
in real estate; and in both cases the making of perma-
nent improvements was regarded as tantamount to an
investment in lands. The fact that investment in
real estate is not among those authorized for trustees
by our statute, would seem to preclude the adoption of
the Massachusetts rule in this State, and ordinarily
to limit the right of trustees to use the principal of a
trust fund for permanent improvements to situations
where authority to do so can be found in the instru-
ment creating the trust or in the powers of trustees
to make investments under the law. General Statutes,
§ 4903, as amended by Public Acts of 1925, Chap. 171.

If we turn to the will before us we find, on the
one hand, that the testator has expressly stated, in
the eighth paragraph of his will, his intent that none
of the premises should be sold during the trust, and
as the trust is to terminate when the youngest child
reaches the age of twenty-one, which cannot be
later than 1937, this restriction is valid. *Colonial
Trust Co.* v. *Brown,* 105 Conn. 261, 279, 135 Atl. 555.
On the other hand, in seeking any intent the testator
had as to changes and improvements in the premises
during the trust, the provisions of the fourth paragraph
of the codicil require scrutiny. He there directs that
"any and all monies and income belonging to my estate

and remaining in the hands of my executors and trustees after the payment of all legacies, bequests, unsecured indebtedness, and expenses of settling my estate," is to be used to pay off his mortgage indebtedness, and, if any remains after the mortgages are paid, he directs its investment as trust funds are allowed to be invested by law. The casual reading of this provision might indicate that the testator had in mind such monies as came into the possession of his executors at or after his death, during the settlement of the estate. There are several circumstances, however, which militate very strongly against that view. In the paragraph of the codicil just preceding the one in question, he speaks of the payments to be made to his wife during the trust as "the allowance or bequest" given her thereunder, so that in his mind that provision for her was regarded as a "bequest." His direction contained in the fourth paragraph of the codicil as to money or income in the hands, not only of his executors, to whom the settlement of the estate would be confided, but also of the trustees, who would take over the property only after the legacies, indebtedness and expenses of settlement had been paid, indicates pretty clearly that he meant to include also in the expression "monies and income belonging to my estate" such income as should be received during the period of the trust. At his death the mortgages on the property aggregated $116,000; while we are not informed as to the property owned by him at that time, it does appear that the estate coming to the trustees, which was his entire property aside from the sums necessary to pay a few small legacies and settle the estate, consisted of the real estate here in question, of an aggregate value of about $500,000, subject to the mortgages; so that it is pretty apparent that the testator, in speaking of a possible excess of monies and income after the mort-

gages were paid had in mind payments made on them from income accruing during the trust. Most important of all, under the provisions of the will establishing the trust, the only disposition made of income during its continuance was a monthly payment of $600 to the testator's wife, with such additional sums as the trustees in their discretion might deem necessary for her comfortable support, and necessary expenditures for the suitable education of his children. If these payments did not exhaust the income coming to the trustees, as in fact they did not, no disposition of the excess was provided in the will itself. This would seem to be one of the controlling reasons for the provision in the codicil we are considering, for under it, if it applied to income received during the trust, any excess would be applied to discharge the mortgage indebtedness, and if that should all be paid, then it would be invested, as is clearly implied, as a part of the corpus of the trust. We regard the provision in the codicil we are considering as including monies and income received by the trustees and not required to make the payments under the trust specified in the will. Such has evidently been the practical construction adopted by the trustees, for it appears that they have reduced the mortgage indebtedness by the payment of $13,000 of income received by them.

Such being the intent of the testator as expressed in the codicil, it would follow that he must have contemplated that the properties should be retained during the trust in virtually the condition in which they were at his death, ordinary repairs excepted; for, had he contemplated substantial improvements in the premises, any excess income would have been the fund to which he would have first pointed to defray the necessary expenses. Certainly he would hardly have directed the use of the money to discharge the

mortgages upon the properties existing at his death, when it must have been obvious that only by its use, or by creating additional mortgage indebtedness, could such improvements be made. Nor is there anything remarkable in attributing such an intent to him. The will was executed in 1923, and the codicil in 1925. The trust would not last longer than the time when his youngest son became twenty-one, that is, 1937, a period of twelve years. Except for the fire, the premises when the codicil was executed must have been in practically the same situation as now. It would not be strange if he did not wish his trustees, his brother and son, the latter still a young man, to embark upon extensive building operations, but preferred to have the premises remain substantially as they were until the end of the trust, which at most would be some twelve years after the codicil was executed. There is nothing in the facts stipulated which makes unreasonable or contrary to public policy the purpose of the testator that no permanent or extensive improvements should be made on the premises and consequently no reason why it might not be given effect. *Colonial Trust Co. v. Brown*, 105 Conn. 261, 284, 135 Atl. 555; *Estate of Cole*, 102 Wis. 1, 10, 78 N.W. 402.

There being, then, no authority given to the trustees in the will to make extensive permanent improvements on the premises but rather the contrary, their right to do so must arise, if at all, out of the situation created by the fire upon the premises at 73 to 81 Bank Street, and cannot extend beyond those premises. In the administration of a trust, circumstances sometimes bring about a situation where adherence to the directions given by its creator for its management or the application of the ordinary rules of law, would defeat the very purpose which the trust is meant to accomplish. To borrow an illustration of the Court of Appeal

in *In re New,* L.R. (1901) 2 Ch. Div. 534, suppose a direction be given for the sale of the trust property on a certain day, but when that day comes, unforeseen circumstances will result in the sale if then made being ruinous to the estate; or, to restate the forceful inquiry made by the court in *Curtiss* v. *Brown,* 29 Ill. 201, 230: "Can it be said that the beneficiary of an estate which would bring in the market $100,000, should perish in the street for want, or be sent to the poorhouse for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating the trust?" The principle is well stated in *Pennington* v. *Metropolitan Museum of Art,* 65 N.J. Eq. 11, 22, 55 Atl. 468: "If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate to wholly prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instructions and directions for a course of conduct which, though differing from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change to produce the intended effect. . . . How far it may extend on other grounds need not be considered." See also *Marsh* v. *Reed,* 184 Ill. 263, 56 N.E. 306; *Johns* v. *Montgomery,* 265 Ill. 21, 106 N.E. 497; *Upham* v. *Plankinton,* 152 Wis. 275, 285, 292, 140 N.W. 5; *Bennett* v. *Nashville Trust Co.,* 127 Tenn. 126, 153 S.W. 840; Underhill on Trusts & Trustees (7th Ed.) p. 218. These authorities point out, and the very nature of the authority given trustees under this principle necessarily requires, that

it should be most carefully and sparingly used and it is
to be borne in mind that it is the necessity of the
situation which brings it into operation, not the mere
fact that thereby the estate may be administered in a
way which will be more advantageous to its bene-
ficiaries.  See also *In re Legh's Settled Estate,* L.R.
(1902) 2 Ch. Div. 274, 280; *In re De Teissier's Settled
Estates,* L.R. (1893) 1 Ch. Div. 153, 161.  The nature
of the power is well expressed in the word adopted in
England to describe it, "salvage."

It appears from the facts stipulated that, while in
the last year before the fire the building on the prem-
ises in question brought in a net income of $2,610.35,
the rentals now reasonably to be anticipated from it
will not be sufficient to pay the necessary charges upon
the property, that the upper floors are now untenant-
able and are boarded up, so that the whole building
presents an unsightly appearance; and that it is a
liability which it would cost $5,000 to remove.  There
has arisen a situation by reason of the fire which was
evidently in no way contemplated by the testator and
which has converted the property from one which was
producing revenue for the estate to one where it must
be a liability unless something can be done in the way
of substantial improvements.  The situation is one
which might well invoke the principle we have been
discussing. On the other hand, it does not appear that
there is not sufficient income from the other proper-
ties in the trust to discharge all the obligations resting
upon the trustees.  In this situation it is peculiarly
important to bear in mind that the prime consideration
for the exercise of the power to permit deviations
from the rules which would otherwise control is the
necessity for the preservation of the estate and not
merely the administration of the trust in a way to
produce a greater benefit for its beneficiaries.  The

trustees have not asked us to approve any particular plan for the improvement of the property, and properly so. It would hardly be possible to arrive at a satisfactory solution upon a stipulation of facts which leaves out so many elements which ought to be considered, and upon an *ex parte* argument. The trial court is in a far better position to advise the trustees upon the basis of the evidence produced before it, as to any particular plan of development, having as it does the right to require further disclosure of facts if it is not satisfied by the evidence produced and, in view of the fact that the interests of minors are involved, being under the duty to satisfy itself in this way, if it be in doubt. These suggestions we may, however, properly make. There is now a mortgage of $75,000 upon the premises, and the estimated expenditure required for the building suggested by the trustees would involve an additional $100,000, also to be raised by mortgage. The whole plan obviously involves elements of risk and uncertainty and if, for any reason, the building plan once embarked upon should fail, the title to the property might be jeopardized, and further charges upon the principal of the trust might become necessary. Nor can it be forgotten that, at the expiration of the trust, the testator's wife becomes life tenant of the property and will enjoy its use, while it will very likely be deteriorating in value with the passage of time, thus affecting the interest of the children to whom the remainder is given, some of whom are now minors. Some means should be found to relieve the estate from the burden of carrying the property at an annual loss.

As any plan of improvement will in all probability necessitate the raising of funds from the capital of the trust, it becomes necessary to consider what authority,

if any, the trustees can secure to encumber the property of the estate with a mortgage. We have a statute which authorizes the Court of Probate, upon application of a trustee under a will and upon notice given to all parties in interest and hearing had, to order the sale or mortgage of any real estate held by trustees whenever in the opinion of the court it will best promote the interests of the beneficiaries under the trust, provided such sale or mortgage is not prohibited by the will; and the statute proceeds that the court may make any orders necessary to protect the rights of all parties in interest and to carry the sale or mortgage into effect, and "the court ordering such sale or mortgage shall direct the funds realized therefrom to be invested by said trustee for the benefit and improvement of such trust estate, or of the parties interested in such trust, in such manner as said court may deem proper, in investments authorized by law for trust funds." General Statutes, § 4902. Except as possibly limited by the last clause of the statute quoted, its terms are sufficiently broad to permit the Court of Probate to authorize the plaintiffs to borrow money upon the security of the real property in their possession. Previous to 1897 this statute had only authorized the sale of trust property, but in that year it was extended to embrace mortgages as well. To accomplish this, the words "or mortgage" were inserted after the word "sale" wherever it occurred in the statute and the clause in the portion above quoted which had read "for the benefit of the parties interested in such trust" was made to read "for the benefit and improvement of such trust estate, or of the parties interested in such trust." Public Acts of 1897, Chap. 208. As applied to a sale, the final clause, requiring the proceeds to be invested "in investments authorized by law for trust funds," was apt and might be understood to refer to

the investments which the statute designates as proper for trust funds. As applied to a mortgage, however, such an interpretation would go far to defeat the purpose of the statute, for the authorized investments include only mortgages on real estate and certain bonds, stocks and securities; General Statutes, § 4903; and there could rarely, if ever, be reason to mortgage the trust estate to secure funds for such investments. No doubt an appreciation of the wider purpose which the mortgaging of the estate might serve led to the addition of the words "for the benefit and improvement of such estate." By these words a legislative intent consonant with the natural purpose of the change in the statute is indicated, that the money realized upon a mortgage was to be used, not simply to make additions to the invested principal of the estate, but rather to improve the condition of the principal already in the hands of the trustees. As applied to mortgages, the concluding clause of the statute must be understood to mean that the court shall direct the proceeds realized to be used for such purposes as are authorized by law, that is, not by the statute alone, but also by the principles of law established for the administration of trusts. Such was the interpretation we placed upon the statute in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 286, 135 Atl. 555. It follows that if the plaintiffs secure the approval by the Superior Court of a plan for the improvement of the premises injured by the fire which will save the estate from loss and that plan involves mortgaging them to secure the necessary funds, the plaintiffs may apply to the Court of Probate for, and under the statute the court may grant them, authority to make such a mortgage. There is no reason in law why it should not be placed upon properties held by the trustees other than that one affected by the fire, but in all such cases regard must

be had for the fact that very likely the best interests of the estate will be served if, when the time for distribution comes, different pieces of property may be dealt with as separate units, and upon the facts stipulated in this case, the mortgage must be confined to the premises to be improved, numbers 73 to 81 Bank Street.

The remaining questions concern the power of the trustees to execute leases of the property. No power to lease is expressly given them in the will or codicil, but they are directed to hold, manage and care for the property given them by the testator, to collect the income therefrom and to expend it for the purposes we have before stated; and, in view of the nature of the property and of these obligations, a power to make leases is necessarily implied. The real question upon which the trustees desire advice is as to the length of time such leases may be made to run. In general, trustees having a power to lease must exercise that power reasonably, having regard to the rights of the beneficiaries and those ultimately entitled to the property, the nature of the property, the uses to which it may advantageously be put and the usual and customary methods of dealing with such property in the locality where it is situated; and this rule applies to the duration of leases they may properly make. A trustee may unquestionably be expressly authorized, by the instrument creating the trust, to execute leases which will or may run beyond the duration of the trust, the legal effect of such authority being to couple to his estate at law a power, and to limit the estate of those entitled at the end of the trust to the extent of any leases so validly executed under it. Authority to execute leases which may run beyond the term of the trust may also be impliedly given, as, for instance, where the power to execute them is necessary to accom-

plish the purposes of the trust. In the case of a trust whose duration is uncertain because made for the life of some person or, as in the one before us, until the youngest of testator's children reaches a certain age, to deny the right to make any lease which might run beyond the end of the trust period would in many instances destroy the rentability of the property. On the other hand, the right of those entitled to the property at the termination of the trust to receive it free of incumbrance or charge is one not lightly to be disregarded and is an important consideration in determining the duration of leases which a trustee may be regarded as having authority to execute. Leases by trustees which will not run beyond the termination of the trust, or if its termination is indefinite in time, beyond its probable duration, are ordinarily within their implied powers, and leases extending beyond those limits may be, if it appears that they are reasonably necessary for the accomplishment of the purposes of the trust or the preservation of the trust property. Unless the necessity to make leases of the latter class is clear, trustees should seek the advice of the Superior Court as to the period they may be made to run. These principles, we believe, may be deduced from the leading authorities dealing with this question. *In re Hubbell Trust*, 135 Iowa, 637, 113 N.W. 512; *Upham* v. *Plankinton*, 152 Wis. 275, 301, 140 N.W. 5; *Denegre* v. *Walker*, 214 Ill. 113, 73 N.E. 409; *Sweeney* v. *Hagerstown Trust Co.*, 144 Md. 612, 125 Atl. 522; *Wilmington Trust Co.* v. *Carrow*, 14 Del. Ch. 290, 125 Atl. 350; *Hutcheson* v. *Hodnett*, 115 Ga. 990, 42 S.E. 422; *St. Louis Union Trust Co.* v. *Van Raalte*, 214 Mo. App. 172, 259 S.W. 1057; *Labatut* v. *Delatour*, 54 How. Pr. (N.Y.) 435; 2 Perry on Trusts & Trustees (5th Ed.) §§ 484, 528; 26 R. C. L. pp. 1301, 1302; note, 14 Anno. Cas. 651.

The sole statement in the stipulation bearing upon this matter is that it is not and will not be possible, even if the buildings upon the premises are improved, to secure the most desirable and stable class of tenants for them unless leases for long terms are made. The words "long terms" are most indefinite and would afford no basis for any present advice to the trustees as to the length of time as to which they may execute leases. Moreover, it is to be noted that the stipulation does not state that it will not be possible to fulfil all the purposes of the trust by granting leases which will not run beyond its probable termination. When the trust ends, in 1937, if not before, it seems probable that all persons interested will be of full age and in that case such arrangements may be made for the management of the property as will best meet the wishes of all. That time is so near at hand that the present making of leases for any very long period would seem questionable. If, however, the trustees deem it reasonably necessary for the proper performance of their duties to grant leases in excess of the probable duration of the trust, they may seek the advice of the court, not, as they suggest in one of their questions, the Court of Probate, but our court of general chancery powers, the Superior Court. *Security Co.* v. *Pratt,* 65 Conn. 161, 175, 32 Atl. 396; *DeLadson* v. *Crawford,* 93 Conn. 402, 405, 106 Atl. 326.

We answer the questions propounded as follows: To question "a" we answer that the words "hold, manage and care for" the property of the trust mean that the trustees are to hold the legal title to the property and administer it with the same powers and subject to the same limitations as ordinarily pertain to trustees, with the additional powers we have outlined in the foregoing opinion. To question "b" we say that the words "all monies and income" include income received by

the trustees during the period of the trust, as well as that received by the executors. To questions "c" and "d" we answer that the trustees may make valid and binding leases of the real property in the trust, within the limitations above stated. To questions "e" and "f" we answer that upon the facts stipulated the trustees may make extensive and permanent improvements to the property at numbers 73 to 81 Bank Street, provided they secure the approval of the Superior Court for the plan and method they propose to adopt, given in the light of the considerations we have stated, but that upon the facts before us they may not make such improvements to the other properties in the trust. To question "g", it is sufficient to say that the Superior Court can in its decree make proper orders to protect the trustees, the trust estate, and the persons interested in it and in the property. To question "h" we answer, yes, as to the permanent improvements of the property at numbers 73 to 81 Bank Street, provided some plan and method for such improvements is approved by the Superior Court.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.