HARTFORD NATIONAL BANK AND TRUST COMPANY, EXECUTOR AND TRUSTEE (WILL OF IDA G. CAPEWELL) *v.* THE PARISH OF TRINITY CHURCH ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 131674

Memorandum filed April 8, 1963

*Robinson, Robinson & Cole,* of Hartford, for the plaintiff.

*James F. Daly* and *Ralph G. Murphy,* assistant attorneys general, for defendant Attorney General.

*Cooney & Scully,* of Hartford, for defendant St. Francis Hospital.

*Reid & Riege,* of Hartford, for defendant The Connecticut Institute for the Blind.

*Shipman & Goodwin,* of Hartford, for defendants Hartford Hospital, Connecticut Humane Society, and Children's Services of Connecticut, Inc.

KLAU, J. This is an action brought by the trustee under the will of Ida G. Capewell seeking a construction of the will and the advice of the court as to its rights, power and authority to improve and/or to lease certain real estate distributable to the trust under the residuary clause of the will.

The testatrix, Ida G. Capewell, died on December 27, 1961, a resident of Hartford, leaving a will dated November 21, 1951, which together with two codicils thereto were admitted to probate on March 20, 1962. Under article 9 of the will, the entire residuary estate was left to the plaintiff in a perpetual trust for charitable purposes. The trust provides first for the payment of small annuities to the defendants The Parish of Trinity Church and Connecticut Humane Society, and then for payment of the remainder of the trust income during his lifetime to the testatrix' brother, George J. Capewell, Jr., who predeceased the testatrix, having died on February 5, 1953. The trust further provides that, for a period of twenty-five years after the death of said brother, one-tenth of the income should be accumulated and added to principal and that the balance thereof (or all thereof after said twenty-five year period) should be divided into twelve equal parts. The trustee is directed to pay over, quarterly, four such parts to the defendant

Hartford Hospital; one such part to the defendant Hartford Hospital for the Old People's Home, a department of said hospital; two such parts to the defendant St. Francis Hospital; two such parts to the defendant Newington Hospital for Crippled Children; two such parts to The Hartford Orphan Asylum (now through merger the defendant Children's Services of Connecticut, Inc.); and one such part to the defendant The Connecticut Institute for the Blind.

The assets distributable to said residuary trust include, in addition to securities having a value on the date of testatrix death of more than $9,000,000, three contiguous parcels of real estate on the south side of Asylum Avenue in Hartford known as Nos. 969, 981 and 983 Asylum Avenue and having an aggregate frontage on said avenue of some 226 feet. The three parcels comprise an area of approximately 70,000 square feet. No. 969 Asylum Avenue contains a large residence which for many years was the home of the testatrix and her family, but since her death it has been unoccupied except by a caretaker. Nos. 981 and 983 Asylum Avenue each contain outmoded dwellings which have been unoccupied for a long period. The property with the buildings presently thereon will not produce a reasonable return to the trust. The buildings represent a liability to the trust. In order to develop the land to its highest and best use, that is, the erection of a commercial building thereon, it will be necessary to raze the existing buildings. If the three parcels are treated as an entity, the value of the land increases over the value set forth as individual lots, for it is then possible to construct a building that is economically sound. The present market value of the land is approximately $230,000. The neighborhood in which said parcels or real estate are located formerly consisted of large private residences but

has now been transformed into a business and apartment-house area. A new multistory office building is being erected adjacent to the subject properties, having National Cash Register Company as its principal tenant. A short distance west on the south side of Asylum Avenue, there is a multistory International Business Machine building, and at the corner of Woodland Street are located the Phoenix Insurance Company, The National Fire Insurance Company of Hartford and the home offices of other insurance companies. The trustee believes that it will be in the best interests of the trust to retain the real estate as a trust asset, to raze the buildings now on said premises and to convert the same to a commercial use. All of the beneficiaries who have appeared, including the Hartford Hospital, Connecticut Humane Society, Children's Services of Connecticut, Inc., the St. Francis Hospital, and Connecticut Institute for the Blind, as well as the attorney general for the state of Connecticut, who appeared in behalf of the public, since the trust is a charitable one, are joined with the trustee in this view.

Under article 9 of the testatrix' will, the trustee is given the following powers with respect to the trust property: "to hold, manage, sell, convey, invest and reinvest, without regard to the limitations imposed upon the investment of trust funds by the laws of the State of Connecticut." While under the terms of the will as set forth above the plaintiff is expressly empowered to sell the real estate in question, since it is an asset distributable to it under the residuary clause of the will, it is of the opinion that it may be more advantageous to retain the real estate for purposes of diversification in investment and that it would be in a stronger position in dealing with the real estate if it were not limited to the single alternative of sale but were

in a position to negotiate with alternative courses of action available to it. The trustee seeks a construction of the will and the advice of the court with respect to its rights, power and authority in the circumstances aforesaid to deal with said real estate.

The charitable trust under the will of Ida G. Capewell is substantially the same as charitable trusts under the wills of her mother, Garafelia (died November 1, 1937), her sister, Mary A. (died March 31, 1949), and her brother, George, Jr. (died February 5, 1953). The four family trusts together make up a fund which the family wished to be known as "The George J. Capewell Foundation." Including the $9,000,000 in Ida's estate, this fund now has total assets with a value in excess of $25,000,000. The Hartford National Bank and Trust Company is sole trustee of each of the trusts. The funds of all the trusts are currently invested in a diversified portfolio of securities.

The trustee seeks a decree answering the following questions: (a) Under the circumstances above set forth, may the plaintiff (the trustee) in its discretion invest funds from the principal of the trust in the construction of a commercial building on said premises and lease the same to a tenant or tenants? (b) Under said circumstances, may the plaintiff (the trustee) in its discretion lease the premises to a tenant or tenants under a long-term ground lease by the terms of which the tenant or tenants would construct a commercial building on the premises which would revert to the trust upon the termination of the lease? All of the beneficiaries who have appeared assert that the questions above stated should be answered in the affirmative.

We are concerned here with questions relating to the power of the trustee to improve and/or to

lease real estate already forming a part of the corpus of the trust. The question of the power of the trustee to purchase real estate as an investment is not involved. The trustee seeks only advice as to its power in making the type of investment relating to the real estate in the trust. The trustee is not seeking advice as to the merit of a particular investment. As Professor Scott points out: "Where a trustee makes or is about to make an investment, two questions arise: (1) whether the investment is of the type which trustees can properly make; (2) if it is an investment of that type, whether the particular investment is proper. The answer to the first question often depends upon a statutory provision, or upon the terms of the trust instrument." 3 Scott, Trusts (2d Ed.) § 227, p. 1663.

The extent of the trustee's investment powers to improve the real estate by investing funds from the principal of the trust as indicated or, in the alternative, to lease on a long term the land already owned is to be determined by the testatrix' intention as expressed in the will. To determine her intention as expressed in article 9 of the will, it is first necessary to determine what the scope of the trustee's powers would have been, under the laws of this state, had the will not contained the unlimited authority expressed in that article. In the absence of directions in a trust instrument, the investment powers of a Connecticut trustee are largely controlled by statute.

Until 1939, the applicable statute simply contained a list of securities in which trustees were authorized to invest, the last such list being found in § 4836 of the 1930 Revision. The "legal list" statute, however, was termed permissive rather than mandatory in *Clark* v. *Beers,* 61 Conn. 87, 88 (1891), the implication being that a trustee was bound only by a standard of "reasonable prudence." "We do

not construe the provisions of . . . [the statute] as mandatory and as depriving trustees of all discretion as to investments. If they invest in the securities expressly allowed by the statute they will, except under very extraordinary circumstances, be protected, no matter how the investment may result. Acting within the express provisions of the statute would be, of itself, proof of good faith and sound discretion. All investments other than those named in the statute must be justified, when occasion requires, under the rigid rules applicable to investments made by trustees upon their own judgment." Ibid.; see *Beardsley* v. *Bridgeport Protestant Orphan Asylum,* 76 Conn. 560, 564 (1904), implying that the reference in *Clark* v. *Beers,* supra, to the "rigid rules applicable to investments made by trustees upon their own judgment" is simply a reference to a rule of "reasonable prudence."

In *Russell* v. *Russell,* 109 Conn. 187, 194 (1929), however, the court regarded the use of principal for improvement of real estate as outside the authority of a trustee, thus implying that the list was mandatory. "The fact that investment in real estate is not among those authorized for trustees by our statute, would seem to preclude the adoption of the Massachusetts rule in this State, and ordinarily to limit the right of trustees to use the principal of a trust fund for permanent improvements to situations where authority to do so can be found in the instrument creating the trust or in the powers of the trustees to make investments under the law. . . . [Rev. 1918] § 4903, as amended by Public Acts of 1925, Chap. 171 [the legal list statute]." However, the decision can also be explained on the basis that the court found that not only was no authority given for such improvements in the will but, on the contrary, it was the intent of the testator, as expressed in the will, that no permanent or extensive

improvements were to be made in the real estate. *Russell* v. *Russell,* supra, 197.

The Massachusetts rule referred to was described by the Connecticut court in the *Russell* case, supra, 194, as a rule "that trustees have authority to invest the funds in their possession in real estate," citing *Warren* v. *Pazolt,* 203 Mass. 328, 348 (1909). This Massachusetts rule is part of a general rule of prudence governing all investments by trustees and developed by the Massachusetts courts beginning with the case of *Harvard College* v. *Amory,* 26 Mass. (9 Pick.) 446, 461 (1830). "All that can be required of a trustee to invest, is, that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested." Ibid. In *Warren* v. *Pazolt,* supra, 345, a power equivalent to the one encompassed by the first question propounded by the trustee here is recognized. "We have no doubt that a trustee under a Massachusetts trust would be justified in tearing down an old building owned by the trust and erecting a new one in its place when a prudent businessman would do so to secure a fair return by way of income, and at the same time to maintain the corpus of the portion of the principal so invested intact, having regard to the relation which such an investment, when made, would have to the amount of the principal of the trust fund as a whole."

In 1939, the statutory investment powers of Connecticut trustees were broadened by the introduction of a rule of prudence, still applicable today. Cum. Sup. 1939, § 1289e; Rev. 1949, § 6893; as amended, General Statutes § 45-88. Unless the trust

instrument provides otherwise, trust funds may be invested or reinvested in certain mortgages and bank accounts and in "any bonds or stocks or other securities, selected by the trustee . . . with the care of a prudent investor." § 45-88.

Whether § 1289e (1939) was declaratory of the common law which had always been in force in this state, and whether statutes regarding investment of trust funds in force in this state for many years were to be regarded as permissive only, need not be now determined. See Walker, "The Investment of Trust Funds under the So-called 'Massachusetts Rule.'" 13 Conn. B.J. 237. Certainly, so far as securities are concerned, the statute in existence at the time the testatrix made her will and at the time of her death laid down the "prudent man" requirement of the Massachusetts rule. There was no need for the unrestricted power given to the trustee under article 9 of the will so far as investment in securities was concerned. The trustee already had such power under the statute. Whether the trustee might have the power to use the principal to improve real estate, as is desired in the instant case, in the absence of the broad grant of discretion contained in article 9 of the will is arguable. The intent of the legislature in establishing the "prudent man" standard in 1939 with respect to securities may well be indicative of its intent to free the trustee from all mandatory requirements and to return to the doctrine expressed in *Clark* v. *Beers,* 61 Conn. 87, 88, thus making any statutory provision with respect to investment by trustees not exclusive and mandatory, but permissive and not limited. Especially can this be argued in the present case, where the corpus can never be divided among the beneficiaries, the trust is perpetual and the duty of the trustee, to be exercised prudently, is to make the corpus productive. There are no remaindermen

whose interests may be jeopardized by the use of principal for real estate improvement. There is no time set for liquidation or distribution of the corpus. It could well be argued that the dicta in *Russell* v. *Russell*, 109 Conn. 187, 194, indicating a lack of authority in the trustee to use principal of the trust to improve real estate ought not to be applied to a situation such as is here disclosed and that the "prudent man" rule could well have been applied in the present case even without the unlimited authority granted by article 9 of the will.

Whatever doubt may exist as to the state of the law, at the time the testatrix' will was made, with respect to use of principal to improve real estate forming a part of the trust corpus or leasing such real estate for a long term is resolved by the broad power vested in the trustee by the terms of article 9 itself. The powers and duties of trustees in making investments can be regulated by terms of the trust. "One of the most reliable indications of an intention to permit a trustee to invest trust funds in nonlegal investments is a statement in the will or trust instrument that the trustee shall not be limited to investments which are legal for trustees, or that the trustee may invest as he deems best, even though the investments may not be of the character authorized by law for the investment of trust funds." See note, "Authorization by trust instrument of investment of trust funds in nonlegal investments," 78 A.L.R.2d 37, § 18; see *In re Missett's Will*, 136 N.Y.S.2d 923 (Surr. Ct. 1954). Article 9 of the will definitely enlarges the powers of the trustee to use principal of the trust to improve the real estate in question and develop it for commercial purposes.

A clause not so broad in scope as the one contained in article 9 was before the court in *City Bank Farmers Trust Co.* v. *Lewis*, 122 Conn. 384

(1937). The will in question gave the trustees the power to invest in "such other securities besides those recognized by law as they may consider safe, without any restriction whatsoever." The old "legal list" statute was still in effect. The court held, by affirmatively answering certain questions before it, that the trustees had power under the terms of the will to invest trust funds in forms of investment not falling within the types specified in the legal list statute. The court said (p. 386): "It is obvious that . . . [the testator] intended to relieve his trustees from adherence to the investments of trust funds provided for by the statute, General Statutes, 1930, §§ 4836, 4837, 3995 et seq. . . . , and to leave open to their choice such 'securities,' other than those in which investment is so authorized by statute, as they, in the proper exercise of their discretion, consider safe. A grant of discretion to choose from among statutory legal investments would be a useless formality—the trustees having such power without the aid of the testator; if he confers discretion upon them and especially, as here, 'without any restriction whatsoever,' he should be considered as intending to add to the trustees' normal powers." The court's view of the broad investment clause in the *Lewis* case is in accord with the view of Professor Scott. "More frequently the terms of the trust instead of restricting the trustee enlarge his powers in making investments. It is in each case a question of interpretation whether or not the terms of the trust enlarge the scope of permissible investments and if so to what extent. This depends upon how broad the scope of proper trust investments is in the particular state in the absence of a provision in the trust instrument and upon the breadth of the language used in the instrument. Where by statute or by judicial decision the scope of trust investments is narrow, an authorization to

the trustee to make investments 'in his discretion' is ordinarily interpreted to enlarge his powers so that he can properly make such investments as a prudent man would make." 3 Scott, Trusts (2d Ed.) p. 1701.

The grant of broad investment powers to the trustee by the testatrix' will encompassed in the language of article 9 empowers the trustee to invest funds from the principal of the trust in the construction of a commercial building on the real estate described in the complaint and to lease the same to a tenant or tenants. The power to lease the property once improvements have been made thereon is a necessary corollary of the trustee's duty to make the trust property productive. *Russell* v. *Russell,* 109 Conn. 187, 203. The exercise of this power is subject, however, to the rule of prudence required of any trustee. See 3 Scott, op. cit., p. 1704.

Having the power thus to invest principal of the trust in the erection of a commercial building for lease to tenants, the plaintiff trustee also has the power to lease the premises under a long-term ground lease by the terms of which the tenant would construct a commercial building on the premises which would revert to the trust upon the termination of the lease. See Restatement (Second), 1 Trusts § 189, comment 6. Here again, there is no question of a lease beyond the term of the trust, a factor generally held to limit the power of the trustee to enter into leases. See notes, "Power of trustee and court as regards term of lease of trust property," 61 A.L.R. 1368, 67 A.L.R.2d 978; *Russell* v. *Russell,* supra, 204; *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 341. The trust is a perpetual one. No distribution of corpus can ever take place. All the appearing beneficiaries have joined in requesting a decree affirming such power in the trustee. The trustee's duty to make the trust productive, the trustee's desire

for diversification, the highest and best use of the real estate for development as a commercial enterprise—all of these factors plus the broadest discretion in making investments combine to empower the trustee to enter into a long-term lease as indicated. Extraordinarily long-term leases of charitable property have been upheld in England. See note, 61 A.L.R. 1379.

Accordingly, the questions asked by the plaintiff trustee in paragraphs 10 (a) and (b) of the complaint are answered as follows: "With respect to 10 (a)—Yes; with respect to 10 (b)—Yes."

Counsel may prepare and submit a decree for approval by the court in accordance with this memorandum and may arrange for a suitable time for a hearing on the allowance of expenses for counsel fees.