## No. 13,797.

KINGDOM OF YUGO-SLAVIA *v.* JOVANOVICH ET AL.

(69 P. [2d] 311)

Decided April 26, 1937.   Rehearing denied June 1, 1937.

Miss MARY F. LATHROP, Mr. RALPH L. CARR, Mr. JEAN S. BREITENSTEIN, for plaintiff in error.

Mr. BENJAMIN E. SWEET, Mr. HORACE PHELPS, for defendants in error.

Mr. HORACE N. HAWKINS, amicus curiae.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

VASO L. Chucovich, a native of the commune of Risan, in the department of Boka-Kotorska, in what is now the kingdom of Yugo-Slavia (we adopt the orthography found in the caption of this cause), became a naturalized citizen of the United States and lived for many years in Denver. He died December 20, 1933, leaving a last will and testament which was admitted to probate in the county court of the City and County of Denver on February 19, 1934. In the view we have taken of the record, and in light of the arguments advanced by the plaintiff in error, which abandon many of the assignments, it is necessary to consider but two paragraphs of the will. Their construction in connection with the evidence and findings below will dispose of the controversy.

Paragraph thirteenth (f) reads:

"After the provisions of the foregoing gifts, legacies and devises (mentioned in paragraphs 'First' to

'Twelfth,' inclusive, and subdivisions 'a' to 'e,' inclusive, of this paragraph) are made and fulfilled, I direct that all the rest, residue and remainder of my estate be set up, referred to and known as 'The Vaso L. Chucovich Fund,' to be used for the following purposes, that is to say:

"My said trustees are directed to use, apply and expend the entire income and principal of my property so remaining, in whatever form it may then be, for the support, relief and maintenance of persons (both male and female) residing in the Kingdom of Yugo-Slavia, who by reason of illness, disability, infirmity, misfortune or old age, are unable to care for and support themselves; and my said trustees, in their discretion, may distribute such property so left in trust, directly to such persons; or they may transfer such property to organizations, hospitals, homes, or suitable institutions already established and existing in said Kingdom, or to any public or Government official thereof, for the purpose of administering and distributing said fund; or my said trustees may (should they think it wise so to do) organize, establish or acquire one or more hospitals, homes for the infirm, sick and aged, or other suitable places or institutions for such purpose, anywhere in said Kingdom.

"While my said trustees are at liberty to use said fund for such persons residing anywhere in said Kingdom, I advise that said fund be used preferentially for the relief and support of such persons residing in the commune (town) of Risan (my native town); next, in the Department of Boka-Kotorska, in said Kingdom; and then elsewhere in said Kingdom.

"Should said fund not all be required for the purposes above mentioned, then my trustees shall use and apply any remaining part thereof, for the education of worthy boys and girls residing anywhere in said Kingdom, who, by reason of lack of financial support from parents or other source, are unable to obtain an education.

"It is my desire that the distribution of this fund by my said trustees shall not continue over too long a period

of time. I, therefore, direct that my said trustees shall make full distribution of this fund within a period of twenty-one (21) years after my death, and that this trust shall not be vested in my trustees for a longer term than twenty-one (21) years. And if for any reason, the said fund should not then be fully administered by my said trustees, I direct that at or before the expiration of said period of years, any balance remaining in the fund shall be turned over to and fully transferred to some organization or institution formed or to be formed for the purpose of administering this fund in said Kingdom, or to some public or Government official thereof, to be administered for the persons and purposes aforesaid.''

Paragraph eighteenth reads:

''It is my desire that the executors of this my last Will and Testament, shall have the benefit of the advice and services of James A. Marsh of Denver, Colorado, in all legal and business matters in connection with the administration of my estate; and I request that the said James A. Marsh act as attorney for the executors in the administration of my estate and that he advise and assist them in all legal and business matters in connection therewith. I direct that there shall be paid by my executors to the said James A. Marsh, out of my estate, as a part of the expense of administration, the sum of ten thousand dollars ($10,000.00), this for his compensation covering such advice and services.''

The trustees referred to in paragraph thirteenth (f) of the will are the defendants in error, Peter A. Jovanovich and John S. Chucovich. Both are natives of Yugo-Slavia, and are naturalized citizens of and have resided in the United States and in Colorado for more than ten years. Jovanovich is a nephew of the decedent, Chucovich a cousin. Jovanovich, for some five years before his uncle's death, was in charge of his affairs. By the thirteenth paragraph the residue of the estate was left to them, as trustees, for certain purposes of which those set forth in section (f) of the paragraph are a part. In the

event of the death, resignation or inability to act of either of the trustees the testator directed that his nephew, George L. Subotich, also a resident of Colorado, fill the vacancy, and in the case of further vacancies that the remaining trustee designate the successor with the approval of the county court of the City and County of Denver. The defendants in error were also executors of the will; they employed James A. Marsh as their attorney, and they and he continued to act in such capacities until the estate was closed on April 9, 1935. On that day, on motion of the trustees, pursuant to '35 C. S. A., c. 176, sec. 227 (C. L. 1921, sec. 5365), the court found that it was the intention of the testator that the county court should continue the administration of the estate until the trusts in the will should be fully executed, confirmed the appointment of Jovanovich and Chucovich as testamentary trustees and administered the oath to them as such. The plaintiff in error objected to their appointment and also to the allowance of an attorney's fee of $25,000 to Mr. Marsh.

The positions of the plaintiff in error appear to be these: 1. That '35, C. S. A., chapter 176, section 227, is unconstitutional because it endeavors to confer jurisdiction upon the county court beyond that permitted by article VI, section 23, of the Constitution. 2. Assuming the constitutionality of the section mentioned, that it was error for the court to permit the trustees to act without bond in view of '35 C. S. A., chapter 176, section 229. 3. That the courts of this state have no jurisdiction over the administration of a valid charitable trust where the beneficiaries are residents of a foreign nation. 4. That it was unlawful to allow Mr. Marsh any fee in excess of the $10,000 provided in the will.

█ 1. Section 23, article VI, of the Constitution, provides: "County courts shall be courts of record and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointments of guardians, conservators and administrators, and set-

tlement of their accounts, and such other civil and criminal jurisdiction as may be conferred by law: Provided, such courts shall not have jurisdiction in any case where the debt, damage or claim or value of property involved shall exceed two thousand dollars, except in cases relating to the estates of deceased persons.'' It is argued that because there seems no doubt a declaration of trust created by some other instrument than a will, and involving more than $2,000, would be beyond the jurisdiction of the county court, it necessarily follows that trusts involving more than $2,000 and established by a will are beyond that court's jurisdiction. Further, it is said, jurisdiction, if it attaches at all, arises because the Constitution or a constitutional statute has given it, while under the statute now in question ('35 C. S. A., c. 176, §227) jurisdiction depends upon the intention of the testator. We do not perceive that these arguments present difficulties. The Constitution provides that the county court * * * shall have original jurisdiction in all matters of * * * settlement of estates of deceased persons. * * * If it shall please a testator to postpone the settlement of his estate until his lawful desires shall have been accomplished it is the duty of the courts to forward his purpose. And since, under the will now before us, settlement of the estate cannot be accomplished until the terms of the will have been carried out, only the county court has original jurisdiction under the Constitution. The distinction is found in the intention of the testator. If he intend to establish a trust free of the administration of the county court his estate is settled ''after the payment in full of all debts and legacies,'' and only the jurisdiction of the district court, when properly invoked, would attach. But where he intends that the administration of his estate shall continue after the payment in full of all debts and legacies his estate is not to be considered settled until the trust or trusts created by his will have been fully executed, and the jurisdiction of the county court must be sought. And certainly, at all

events, there is not that degree of doubt as to the constitutionality of the statute as to warrant our holding the legislature to have contravened the fundamental law in this enactment.

2. Section 229, chapter 176, C. S. A., 1935, provides: "Whenever any last will or testament admitted to probate in any court provides for a testamentary trust, the county court, or the judge thereof, shall, at the time of the final settlement of the account of the executor or administrator with the will annexed of such will require that the testamentary trustee, or trustees, shall file in the office of the clerk of such county court, his or their bond with two or more sufficient sureties, or one or more surety if such sureties be a surety company authorized to execute such bonds within the state of Colorado, which bond or undertaking shall provide for the faithful discharge of the duties of such trustee or trustees, and shall be in an amount not less than the amount of the estate bequeathed, and devised to such testamentary trustee or trustees. If, however, the express terms of the will provide that such testamentary trustee, or trustees, shall not be required to give bond, such bond shall only be required in the discretion of the court." It is repeatedly asserted by the plaintiff in error that the trustees were permitted by the court to assume their duties without giving the bond required by '35 C. S. A., chapter 176, section 229, and that such bond never has been given. Diligent search of the record fails to disclose either that the bond has been given or that it has not. Manifestly, however, such a bond should be given, and if it has not been, it is the duty of the court below forthwith to require the same.

3. We are told that great difficulty will be entailed in the carrying out of the trust since the trustees are here while the beneficiaries are in a distant land. Serious consequences, it is said, will follow retention of the fund in this state and control of its administration by our courts. We are left unenlightened as to the great difficulty or the serious consequences for, aside from the

question of the bond, the conduct of the trustees is not assailed and, indeed, appears to have been blameless. Nor do the many authorities relating to trusts of all kinds to which we have been referred by counsel afford any guidance.

The problem is not, however, without lack of ready solution. The cardinal rule, that we are bound by the expressed intention of the testator, is sufficient to dispose of the issue. The property bequeathed by Mr. Chucovich was his property. Our law permitted him to dispose of it by will for lawful purposes and it is conceded that the purposes expressed in paragraph thirteenth (f) are lawful. It was his right, and he exercised it, to designate the beneficiaries of his bounty, and it was his right, and he exercised it, to designate the persons who should dispense his bounty. It was his right, and he exercised it, to have his estate settled by the county court of the City and County of Denver, and it was his right, and he exercised it, to have that court supervise the administration of his trustees and approve the nomination of their successors. There may, or there may not be, practical difficulties to be encountered in the administration of the trust because of the distance separating the trustees and the beneficiaries. Such considerations, however, cannot be permitted to thwart the testator's expressed desires. In apt words he chose his trustees, defined their duties and gave them certain discretion. Whether it would have been wiser to have directed the payment of the fund over to trustees resident in Yugo-Slavia, or to the Bureau of Endowments in the Ministry of Education of the government of that kingdom, and the latter was prayed for below, it is not our province to determine. The testator chose otherwise and his lawful wishes will be carried out. In short, the corpus of the fund is here, the trustees are here, and the court which the testator desired should have jurisdiction of the trust, of the trustees and of their successors, is here, and we find nothing in the record to warrant disturbance of the situation thus created and existing.

4. By paragraph eighteenth of the will the executors were requested to employ James A. Marsh as their attorney, and the testator directed "that there shall be paid by my executors to the said James A. Marsh, out of my estate, as a part of the expense of administration, the sum of ten thousand dollars ($10,000.00), this for his compensation covering such advice and services." A beneficiary under a will, and Mr. Marsh is to be considered as such under the language of paragraph eighteenth, may elect whether he will take a bequest, and is allowed a reasonable time for acceptance or rejection. On the day the will was admitted to probate Mr. Marsh in writing notified the executors, and informed the court, of his rejection. The executors, knowing of the rejection, and informed by Mr. Marsh that he would expect compensation based upon the reasonable value of his services and the responsibility assumed, continued his employment. The evidence below fully warranted the findings of the court that the bequest was rejected and that $25,000 was a reasonable fee. Those findings cannot be disturbed here.

Let it be ordered, therefore, that the judgment below be affirmed.

Mr. Chief Justice Burke and Mr. Justice Bouck, dissenting, think the county court was without jurisdiction.