## No. 14,594.

DUNKLEE, TRUSTEE ET AL. *v.* COUNTY COURT OF THE CITY
AND COUNTY OF DENVER ET AL.

(103 P. [2d] 484)

Decided April 1, 1940. Rehearing denied May 6, 1940.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYES, Mr. WILBUR M. ALTER, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

The question for determination in this proceeding is whether, in the matter of the Estate of George W. Clayton, deceased, the Denver county court had jurisdiction to order a general audit of the accounts of the Clayton College Trustees and the Clayton Trust Commission for the three-year period ending December 31, 1937, by the certified public accountants who are here included as defendants in error. No other question is considered or determined. The county court, on May 2, 1938, so proceeded and upon appeal its jurisdiction was upheld by the district court. Plaintiffs in error here challenge the correctness of the latter judgment. The will of George W. Clayton, executed in 1892 and admitted to probate in the county court of Arapahoe county, in which the city of Denver then was situate, in 1899, the year of his death, by the fourteenth clause thereof gave the residue of his estate to the city of Denver in trust for the purposes of founding, establishing and permanently maintaining an institution for the education and maintenance of poor, white, male orphan children, to be known as the George W. Clayton College.

In the opinion in *Clayton v. Hallett, et al.*, 30 Colo. 231, 70 Pac. 429, wherein the validity of this bequest and devise, and the power of the city of Denver to accept the same, were decreed, the fourteenth clause of the will is quoted in its entirety and available for inspection. The provision directed that the college be managed and supervised by a board of five trustees consisting of designated public officials or persons nominated by them. This group is known as the Board of Trustees of the George W. Clayton College. The George W. Clayton Trust Commission consisting of the mayor, manager of revenue, and president of the council of the city of Denver, created by its ordinance, is the agency

attending to the fiscal management of the endowment and the transmittal of income to the college trustees for expenditure by them in the operation of the school. By nomination of the testator, Hon. Moses Hallett was appointed executor of the estate. In this capacity he made and filed his final report in the county court on October 13, 1902. Mary F. Lathrop, an attorney at law, objected to its approval upon the ground that there was an unpaid attorney fee due her and the ensuing litigation on this issue *(Lathrop v. Hallett,* 20 Colo. App. 207, 77 Pac. 1095; *Hallett v. Lathrop,* 20 Colo. App. 212, 77 Pac. 1096; *People, ex rel. Lathrop v. Court of Appeals,* 33 Colo. 264, 79 Pac. 1021), postponed action until May 29, 1905, when the report was approved, the decree reciting, inter alia: "It is hereby further ordered that upon filing in this Court a receipt showing that he has turned over to himself as such trustee all the residue of said estate as herein required he shall be discharged as such executor to take effect as of the date of said final report [October 13, 1902], from which date to account as such trustee."

█ Plaintiffs in error assert that the jurisdiction of the county court over the estate and testamentary trust wholly terminated on the 1902 date last mentioned, as a result of which it had no authority to make the 1938 order of which complaint is here made. Where a testator so directs, or such intent is apparent from his will, the county court, under its original jurisdiction in probate matters conferred by section 23, article VI of the Constitution and the terms of section 227, chapter 176, '35 C.S.A., properly may continue to supervise the administration of a testamentary trust created by such will to the extent commanded thereby, notwithstanding the debts of the estate and legacies fixed by the will have been paid in full and the executors discharged. *Yugo-Slavia v. Jovanovich,* 100 Colo. 406, 69 P. (2d) 311.

Disregarding for the moment the contention of plaintiffs in error that section 227, supra, has no pertinency

in this proceeding, which point hereinafter will be discussed and disposed of, we are of the opinion that the express provisions of the Clayton will manifestly demand the application of the above rule to the situation under consideration.

Concerning the residual fund and property after it shall have passed in trust to the city of Denver, which obviously would be subsequent to the discharge of the executor, subdivisions 3 and 4 of the fourteenth clause of the will, prescribe: "Third: That separate, true and accurate accounts, distinct from all other accounts, of the said Corporation of the City of Denver, shall be kept, concerning the said Devise, Bequest, College, and funds, and of the investment and application thereof, and that separate account or accounts, of the same shall be kept in bank not blended or mingled with any other account, *so that it may at all times appear, on examination by a committee to be appointed by the Judge of the County Court of Arapahoe County that my instructions have been fully and Strictly complied with.* Fourth: That the said Corporation Shall render a detailed account, verified by oath, annually, *to the County Court of Arapahoe County sitting in Probate, at the January term thereof, concerning the said devised and bequeathed Estate, and the investment and application of the same, and shall submit all their Books, papers, and accounts, touching the same to a Committee of said County Court, for examination, whenever the same shall be required.*"

Subdivision Fifth requires the annual publication in a newspaper in Denver of an additional public report on the state of the trust and the college.

 Thus the testator unequivocally enjoined recurrent independent audits of the property of the trust during the existence thereof, by auditors to be appointed by the judge of the county court at such times as the exercise of proper discretion would suggest. The testator's employment of the word "committee" as descriptive of the auditing body, considered in the light of the

nomenclature of 1892, in no way would mitigate against the selection of professional accountants especially trained in this field to make the examination. The imposition of this function as well as the requirement that reports on the state of the trust be filed annually in the county court, import a continuing supervision as to such matters by that tribunal. We deem it probable that by these requirements as a matter of inherent constitutional prerogative, independent of the statute, section 227, supra, the county court had jurisdiction over the trust in the particulars under consideration. In any event, we further are of the opinion that the statute also was operative. Relying upon the retrospective feature of the 1905 judgment above quoted making the discharge of the executor effective as of October 13, 1902, plaintiffs in error claim that section 227, supra, adopted in its original form in 1903, cannot be made applicable retroactively to an estate which they say was closed in 1902. The latter assumption is fallacious. Notwithstanding that the 1905 order—likely a practical expedient to avoid the necessity of filing a supplemental report—formally fixed the date of the *discharge of the executor* in 1902, it is self-evident from the circumstances as well as the express recitals of the judgment, that the *estate proper* was in the process of administration until the entry of the 1905 decree and thereafter until the executor filed in the county court the receipt of himself as trustee as therein required. Even with this accomplished, by the terms of the order the testamentary trustee was required to continue to report thereafter to the county court, which as a matter of fact his successor did.

▪ The saving clause of the 1903 law, section 175, chapter 181, S.L. 1903, expressly permits the application of the act to procedural matters in any estate then "in process of administration or settlement." Further, as a general proposition, it is likely that section 227, supra, being purely remedial and procedural in character, properly could be given a retroactive operation in any event.

59 C.J., p. 1173, section 700. It would seem certain that here no contract obligation or vested right would be violated in so doing.

As historically disclosing a construction consistent with their position here, plaintiffs in error cite that upon the death of Judge Hallett in 1913, a new trustee was appointed by the district court and in 1914, when the residue of the estate passed in trust to the city of Denver, the successor trustee was discharged by that tribunal. Even if such circumstances could be considered as matters of moment in this connection, their effect is somewhat neutralized by the fact that in the proceedings attendant to the discharge of the successor trustee, a report also *was filed in the county court;* that, commencing in the year 1911, reports as provided by the will have been filed therein; and that to the present time, without any exception, approval by the county court of loans of trust funds has been sought and obtained. It also appears that upon a number of occasions, previous to the one under consideration, the county court has appointed committees to audit the trust accounts.

The judgment is affirmed.

MR. JUSTICE FRANCIS E. BOUCK, MR. JUSTICE OTTO BOCK and MR. JUSTICE BURKE dissent.