Town of Bristol *vs.* John H. Nolan, Atty. Gen., *et al.*

MAY 8, 1947.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This bill in equity is before us on a certification under general laws 1938, chapter 545, §7. It was brought by the town of Bristol primarily to obtain a construction of a deed executed by Nathaniel Byfield, late of Bristol, Rhode Island, deceased, on the ground that such deed was a gift creating a charitable trust. The respondents are the heirs of the grantor Nathaniel Byfield and the attorney general of this state.

Service by publication was ordered and made upon the heirs; and after none of them had filed appearance, demurrer or answer, a decree *pro confesso* was entered in the superior court against all of them. A guardian *ad litem* was duly appointed to represent unknown and unascertained persons having any possible interest in the land, and he and the attorney general each filed an answer submitting to the protection of the court the interests represented by them.

Testimony was then taken and when the cause was ready for hearing for final decree, the cause and certain questions of law of doubt and importance were certified to this court, upon motion of the complainant, under G. L. 1938, chap. 545, §§6 and 7.

The bill of complaint alleges the following facts, which are undisputed. The deed in question was executed by Nathaniel Byfield on August 31, 1714, and was duly recorded on June 8, 1715. It conveyed to "John Nutting the present grammer Schoolmaster of the said Town of Bristol & to the grammer Schoolmaster of the said Town for the time being"

several large tracts of land therein described which were situated in the county of Bristol in the province of Massachusetts Bay in New England. These tracts, however, are now within the limits and control of the town of Bristol in the state of Rhode Island. The consideration recited in the deed is as follows: ". . . for and in consideration of a due regard which I have for the advancement of Learning & good education of children, and more particularly to encourage the same within the Town of Bristol . . . ."

The habendum clause shows a conveyance to "John Nutting & to the present grammer Schoolmaster of the said Town of Bristol for the time being forever for their support for the instruction of the children of the said Town of Bristol in good Literature & Education . . . ." Following this language and the usual covenants such clause continues as follows: "Provided always, and it be the meaning and intent hereof that if the said Town shall neglect to place a good sufficient grammer Schoolmaster in the said Town at the death or removal of any schoolmaster for the time being for the space of twelve months after the said death or removal, that then the aforesaid granted commonage & house lots with the appurtenances shall revert to me the said Nath'l Byfield & my heirs as fully & effectually as if this present deed of gift had not been made & executed." Thereafter appear the attestation, signature, seal and acknowledgment.

At the time of the conveyance there were approximately three hundred freemen and no public school system in the town of Bristol. The education of the young children was accomplished by a schoolmaster for the time being who came to live there and to tutor the children in their homes. From 1714 to date the advancement of learning and good education in said town has been carried out continuously through the schoolmaster grantee, through his successors in that position, and later through other duly appointed agents of the town who performed the duties formerly discharged by the schoolmasters as required by the deed.

The land conveyed by the deed has been leased and the income therefrom has always been kept by the town in a special trust account. This income has been expended solely for the education of the children in the town in accordance with the provisions in the deed. The present income from such leasing is approximately $1200 a year. The town, however, alleges that more income and hence greater aid to education could be realized if the land were to be sold and the proceeds were invested in a trust fund to be administered by the town as trustee for the purposes set forth in the deed. To that end the present bill in equity was brought and, according to complainant, seeks primarily a construction of the deed and instructions to the town as the alleged trustee thereunder.

At the outset it should be noted that these certifications, purportedly made under §§6 and 7 of chap. 545, cannot both be valid in this cause. Certification under §7 is properly made only when the bill in equity is brought solely for the construction of a will or deed, or for instructions to a trustee thereunder. *Maddalena* v. *Masso,* 48 R. I. 92, 94; *Gaboriault* v. *Gaboriault,* 68 R. I. 435. Under that section, when the cause is ready for hearing for final decree, the superior court must certify the whole cause for determination by this court. *United States Trust Co.* v. *Tax Assessors of Newport,* 47 R. I. 420; *Gould* v. *Trenberth,* 59 R. I. 220. Under §6 certain questions of law of doubt and importance, when properly brought upon the record, may be certified. But in general such questions must be raised prior to the trial thereof on its merits, or upon a motion in arrest of judgment; and they must be necessarily involved in the ruling or decision upon the particular issue then pending for decision by the superior court. *Fletcher* v. *Board of Aldermen,* 33 R. I. 388; *Easton* v. *Fessenden,* 63 R. I. 11; *Spaulding* v. *Martin,* 66 R. I. 367.

Thus these two sections deal with different matters and from their nature both cannot validly come up on a bill brought solely for the construction of a trust deed that must be certified under §7 for determination by this court. How-

ever, where a bill in equity was brought primarily for such a construction of a will or trust deed, this court ignored as surplusage the allegations or prayers for other relief and treated the cause as certified under §7; and we shall treat this proceeding accordingly. *Horton* v. *Horton,* 46 R. I. 492; *Ortman* v. *Streeter,* 67 R. I. 325.

Five questions appear in the certification as made upon the motion of the complainant, and these will be quoted as they are discussed. The first question reads: "Does the gift of Byfield create a charitable trust?" In our opinion the deed in question was a gift and created a public charitable trust. It is true that technical words such as trust, trustee, or charity do not appear anywhere. Nor are particular directions given to the grantee in connection with his carrying out the purpose of the gift, excepting as they are necessarily to be implied from the clearly expressed intent appearing in the deed. The use of such technical words, though usual and advisable, is nevertheless not always essential to create a public charitable trust. Such a trust may be given effect if the language in a deed makes clear the grantor's intent to provide a gift in trust for a public charitable purpose. *City of Providence* v. *Payne,* 47 R. I. 444.

The language of the deed in question makes it clear that the grantor intended to make a gift to be held and used for the purpose of promoting public education among the children in the town of Bristol. The land was not given to the grantee and his successors for their use without qualification; but it was given to them only as schoolmasters for the time being for their support for the express purpose of thereby enabling them to bring educational instruction to the children of the town. In other words, this use of the land by a schoolmaster for the time being was indispensable to the accomplishing of the object of the gift.

This court has held that a gift to promote free public school education among the inhabitants of a district is to be considered as one for a public charitable use that is highly favored in the law. *Town of South Kingstown* v. *Wakefield*

466

*Trust Co.*, 48 R. I. 27. The same substantial principle seems to run generally through the cases on this subject, which are collected in the annotation in 48 A. L. R. 1126-1137.

In our opinion the intent of the grantor and the object of the gift are clearly expressed in the consideration and habendum clauses of the deed and bring it within the category of a gift creating a public charitable trust. Our answer to the first question, therefore, is·in the affirmative.

The second question is: "Does the Town of Bristol, as successor to the schoolmaster referred to in the deed of gift, now hold the lands described in said deed of gift impressed with the same trust?" In our opinion it is evident from the deed that the gift was not intended to be made to John Nutting as an individual; nor. were the words, "the present grammer Schoolmaster of the said Town of Bristol for the time being", added merely to identify him as the particular individual grantee. On the contrary it seems clear to us that the conveyance was intended and was made to him only in his capacity as schoolmaster for the time being for the accomplishment of education and instruction of the children in the town of Bristol, especially as such schoolmaster was the sole source of public instruction and education for the children at that time.

Such intent is made clear in the consideration and habendum clauses; and the object of the gift was further secured by the addition of an express reverter in the event of a failure by the town for.twelve months to provide the means of such education and instruction. It is undisputed that the grantee and his successors as schoolmasters for the time being continued to perform the duties of the trust until about 1844, when a free public school system was established in the town. Thereafter these obligations were taken over and carried out without interruption by some duly appointed agent or official of the school committee or town council of the town of Bristol. In our opinion the town, at least as logical successor of the grantee schoolmaster in continuously providing such means for public education and for carrying out the object

of the gift, now holds the title to the land described in the deed, in trust nevertheless for the same purpose and on the same conditions as that land was held by the original grantee.

The third and fourth questions seem to have been presented in an inverted order, because the answer to the fourth question has an important bearing upon the third question. Hence we shall first consider the fourth question which reads as follows: "Does the Town of Bristol have determinable or qualified fee in the land with right of reverter and of re-entry remaining in the donor and his heirs?"

The complainant argues that we should interpret the deed in the light of conditions as known by the grantor at the time of its execution; and that if so considered it will clearly appear that the dominant intent of the grantor in making the gift was the charity or trust itself, and that any particular use of the land was merely incidental and immaterial, so long as the object of the gift was accomplished without interruption. The argument continues that, in view of the then existing method of providing education for the children of the town of Bristol, the reverter was placed in the deed as the only means probably known to the grantor whereby he could insure the continuity and effectiveness of his charitable gift.

This last speculation is probably true but it does not answer the problem or aid the complainant. In seeking to ascertain the grantor's intention from the language of the deed, as we must, may we ignore entirely the apt and unequivocally expressed condition of reverter that admittedly was intentionally placed in the deed by the grantor? We think the answer is in the negative.

In our opinion the intent of the grantor is clearly expressed and the instant deed in form and substance meets the test of a fee upon a condition subsequent. It is true that conditions subsequent are not favored in law; and that courts will not infer a condition of reverter where none is expressed or necessarily implied. *City of Newport* v. *Sisson,* 51 R. I. 481, and cases cited. Nor will a condition be extended beyond the necessities of the language used. *Brice* v. *All*

*Saints Memorial Chapel,* 31 R. I. 183. Hence it has been said that a deed will not be construed to create an estate upon such condition unless language is used which according to the rules of law, *ex proprio vigore,* imports a condition, or unless the intent of the grantor to create such a conditional estate is otherwise clearly and unequivocally indicated. *Greene* v. *O'Connor,* 18 R. I. 56, 59.

But the language of the deed here plainly imports a condition after the apt words "Provided always", as previously quoted; and the grantor's intent to create such a conditional estate is clearly and unequivocally expressed. The reverter, or perhaps more correctly the possibility of reverter, is expressed in plain and unequivocal language and is attached to the gift. Nothing is left to construction or implication. In these respects the deed here is clearly distinguishable from the deeds and language involved in cases like *City of Providence* v. *Payne, supra; City of Newport* v. *Sisson, supra; Brice* v. *All Saints Memorial Chapel, supra; Brown* v. *Meeting Street Baptist Society,* 9 R. I. 177; *Lackland* v. *Walker,* 151 Mo. 210.

In none of those cases did the trust or deed contain an express right of reverter coupled with the trust in such explicit language as the grantor used in this deed; and in most, if not all, of them the language as a whole was somewhat doubtful and could equally or more reasonably be construed as intending a conditional limitation or a covenant of trust or earnest mode of expression as to the administration thereof.

Nor has any case been cited to us wherein the court, as a matter of mere construction, has rejected entirely such an unequivocally expressed intent to create an estate upon a condition subsequent. Certainly, under the American rule, so called, an estate upon a condition subsequent is given effect where, as here, the condition of reverter is stated in plain language and is expressly coupled with and attached to the gift or trust. See annotation in 70 A. L. R. 1197. In our opinion the town of Bristol took a fee in the land described, upon the same conditions of trust and subject to the

same express right of reverter remaining in the donor and his heirs as stated expressly in the deed.

The third question, which will now be considered, reads as follows: "Assuming the grant of land was in trust and for a charitable purpose, was the use of the land granted incident to the main purpose of the grantor—the establishment of the charity—and *ipso facto* the land not of the essence of the charity; that is, was the charity the dominant purpose of the grantor, not the perpetual use of the particular lands granted for this purpose?"

This question appears to assume that upon a certification for construction of this deed we can hold that the use of the land can be separated from the essence of the charity, which is the object of the gift. The question overlooks the grantor's clearly expressed intent, the nature or quality of the title of the grantee, and the conditions of public education existing at the time of the gift, which matters have been referred to under questions 1, 2 and 4; and it particularly overlooks the express reverter as it appears in the deed. Undoubtedly the grantor intended a charitable gift or trust; but by his language he was no less insistent that the land revert to himself and his heirs in the event of the town's failure for twelve months to have a schoolmaster appointed for the purpose of continuing to carry that trust into effect.

In this respect the grantor's language is significant. He expressly provided that in the event of such a failure by the town the land should revert to him and his heirs "as fully & effectually as if this present deed of gift had not been made & executed." It is difficult to see how this land could revert as *fully* and *effectually* and *as if the deed had not been made and executed,* unless we hold the gift to be upon a condition subsequent. As a matter of mere construction such plain and unequivocal language should not be ignored, especially where it can be given legal effect without destroying or unreasonably impairing the validity and effectiveness of the charitable gift or trust. In other words, where it clearly ap-

pears to be the intent of the grantor to couple the condition of express reverter with the trust in such a way as to make them inseparable, and legal effect can reasonably be given to both, we should not, upon a bill solely for construction, entirely ignore the express reverter as if it were merely subsidiary or incidental. In our opinion nothing held herein is contrary to the views expressed in *Brice* v. *All Saints Memorial Chapel, supra; Brown* v. *Meeting Street Baptist Society, supra;* or in other cases cited by the complainant, because the language there involved is clearly distinguishable from the language of the deed here.

The fifth question reads as follows: "Can the Superior Court, in an appropriate proceeding, empower the Town of Bristol to make sale of the property described in the deed of gift without any condition or restriction which would hamper its sale at an adequate price, and direct the administration of the capital of the trust in its changed form to effectuate the charitable purposes of the donor?"

A great deal of argument was devoted by all parties to this question. It appears to have been the reason which prompted the filing of this bill of complaint. However that may be, it suggests matters which in any event would require competent proof and also a decision by the superior court in an appropriate proceeding under another statute. It does not present matters which are included in the deed and which can be determined by us by a mere construction thereof upon a certification under §7. See *City of Providence* v. *Payne, supra.* Hence, in view of what we have said concerning the propriety of certifying questions of law of doubt and importance in a bill for the construction of a deed, this question is not before us on a certification under §7. In such circumstances the fifth question need not be further considered or answered.

On May 21, 1947, the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Ernst T. Voigt,·Lucien Capone, Voigt, Wright & Clason,* for complainant.

*John H. Nolan,* Atty G., *James F. McCoy,* Counsel, *James J. Fogarty, Jr.,* Gdn. *ad litem,* for respondents.