# No. 16,912.

ESTATE OF CLAYTON.

CITY AND COUNTY OF DENVER, TRUSTEE *v.* PARK HILL
GOLF CLUB.

(259 P. [2d] 617)

Decided June 29, 1953.

Mr. Leonard M. Campbell, Mr. Horace N. Hawkins, Jr., for plaintiff in error.

Mr. Max P. Zall, for defendant in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the court.

The parties are here in the same order as they appeared in the trial court. In the interest of clarity, as well as brevity, we will herein designate plaintiff in error as trustee, and defendant in error as golf club or defendant.

This action was commenced by the filing of a complaint in the original proceedings, In the Matter of the Estate of George W. Clayton, deceased, being No. 5702

of the county court in and for the City and County of Denver. Its object is to have declared null and void the lease pursuant to which the golf club claims the right to possession of certain premises the property of the Clayton estate. At a pre-trial conference all exhibits offered in evidence by the parties, respectively, were identified and introduced, and these, together with an agreed statement of facts, were submitted to the court; trial immediately following the pre-trial conference and without the taking of additional evidence. Judgment of the trial court was favorable to defendant.

On August 15, 1899, George W. Clayton died, leaving his last will and testament dated March 2, 1892, which was admitted to probate in the county court of Arapahoe county October 3, 1899. After the making of certain devises and bequests, by the fourteenth clause of his will the testator directed that all of the residue and remaining portions of his estate should go to "the Corporation of the City of Denver, in trust," for the establishment and permanent maintenance of an institution for the care and education of poor white male orphan children, said institution to be known as the George W. Clayton College. The testator went into considerable detail in directing the exact way and manner in which the college should be organized, financed, maintained and operated, and as the fourteenth clause of said will, in which all of this appears, is set forth in detail in the case of *Clayton v. Hallett,* 30 Colo. 231, 234, 70 Pac. 429, we prefer to adopt that reference rather than to repeat it here. The executor named in the will was directed to see to it that a proper site for the college be obtained, and that it be established as a going concern within ten years from the date of his appointment. After these things were accomplished, the testator directed, that all of the remainder of his estate should be set apart, held and kept inviolate forever "and the income, rents and revenues thereof, shall be used solely and exclusively for the maintenance of said institution and of the Orphans ad-

mitted therein." Under the heading of "express conditions" the testator further directed: "Second: That none of the moneys, principal, interest, dividends, income, or rents, arising, or accruing from the said residuary devise and bequest, shall at any time, be applied to any other purpose or purposes whatever, than those herein mentioned and appointed." He directed that said funds shall not be commingled with any other funds of the city of Denver; that said trustee shall annually account therefor by proper report to the county court; and shall submit all the records pertaining thereto to said court for examination.

Through the course of years, since the will of George W. Clayton was admitted to probate, great changes have occurred in many respects. Shortly thereafter the City and County of Denver was organized, separating in part the county of Arapahoe. Legislation was required to implement this transfer. At first it seems that there was doubt as to whether or not the City and County of Denver might legally accept the trust and act as trustee, as requested by the testator, and to the end that this might no longer be questionable, legislation was enacted specifically authorizing the city to so act. After the executor had succeeded in establishing the college and it became time for the trustee to take over its operation, certain ordinances were enacted to accomplish that end. Many of these events are interesting here only because of their historical value and further reference will hereinafter be had only to such legislation as seems pertinent to the questions involved.

In 1931 the trustee leased to the golf club the lands here involved, and said club from and ever since that time has held possession and occupancy thereof pursuant to one or the other of several lease agreements, the last of which bears date of January 1, 1946. As did its predecessor, this document recites that it is "by and between the City and County of Denver as Trustee of the Estate of George W. Clayton, Deceased, acting by and through

the George W. Clayton Trust Commission" and the golf club, and it is signed on behalf of lessor in manner following: "City and County of Denver as Trustee of the Estate of George W. Clayton, Deceased, by Ben F. Stapleton, James Fresques, F. S. Wilson, Members of and Constituting the George W. Clayton Trust Commission. Attest: Dan D. Diamond, Assistant Secretary." Its term is for ten years from its date, with an option for an additional five years. It is admitted that the golf club has paid its rent, and that it has kept and performed each and all of the covenants and conditions of said lease obligatory upon it. It is not asserted that the lease was procured by or through misrepresentation or fraud, and the good faith of the golf club at all times remains unchallenged. It is admitted that the signatures appearing on said lease on behalf of lessor were, at that time, the officials of the city properly comprising the George W. Clayton Trust Commission. The sole claim and contention of the trustee is that the lease is void from its beginning for the reasons:. (1) That the trust commission had no power to execute it; and (2) that it was not made under the direction, and did not have the approval, of the county court.

The county court found that it had jurisdiction in the premises; that by virtue of authority implied from the terms of the will the trustee had power to lease; that said lease is signed by the proper authority representing said trustee; that said lease is valid, effective and binding upon the trustee; whereupon judgment was entered dismissing trustee's complaint.

Although the specification of points filed by counsel on behalf of the trustee contains eight separate items wherein it is alleged the judgment of the trial court is erroneous, most of them are of a general nature and the entire controversy may here be summarized under two general propositions:

(1) That the lease of January 1, 1946, was, and is, void from the beginning because it was not executed in

the manner and form required by the charter of the City and County of Denver; and

(2) That said lease was void from the beginning for the reason that the terms, conditions and length of time thereof were not directed or approved by the county court.

## I.

■ On behalf of the trustee it is contended that the lease is void for the reason that is was not subscribed by the mayor, under the seal of the city and county, and attested by the clerk, in manner and form as provided by section 7, article II, of the charter of the City and County of Denver, the pertinent part of which reads as follows: "All bonds, contracts or other instruments of writing, requiring the assent of the city and county, shall be subscribed by the mayor, or acting mayor, as the case may be, under the seal of the city and county and attested by the clerk. * * * "

For various reasons, only part of which we will undertake to discuss, we cannot agree with this contention. In the first place towns, cities, counties, cities and counties, and other municipal corporations, are organized primarily for the purpose of carrying on the functions of local government. It is not generally contemplated by legislative bodies that such municipal corporations shall act or serve as trustee and when such a situation as is here presented arises, it is out of the usual line of duties, functions and obligations of such a corporation. Such rare instances as do occur are to be considered only as incidental, and are no part of the contemplated general governmental purpose; therefore, it seems very clear to us, that in adopting section 7 of article II of the charter, it was intended thereby that the same should apply only to the ordinary, usual functions of the City and County of Denver in its governmental and proprietary capacity, without any thought whatsoever having been given to the possibility that the city might, on infrequent occa-

sions, be called upon to do and perform services as a trustee.

That the business of administering the Clayton Trust was not generally regarded as a governmental function is further evidenced by the fact that at the time of the acceptance of appointment by said trustee, and before the duties of said trusteeship were engaged upon, a lengthy and detailed ordinance was passed and adopted setting up the George W. Clayton Trust Commission. Ordinance No. 110, Series of 1910, City and County of Denver. This commission, as provided by said ordinance, was to consist of the mayor, the president of the board of supervisors, and the president of the board of aldermen, and was created, "for the purpose of administering, managing and controlling the said trust estate, and with the powers and duties hereinafter set forth." Said "powers and duties" were then delineated and, without undertaking to repeat the text of said ordinance, it is sufficient to say that they were broad and general; giving said commission full power and authority to handle, manage and supervise said trust in every respect, including the execution of leases and renewal thereof, and even to the sale of real estate, and the making, executing, acknowledging and delivering of all deeds and instruments necessary in the conveyance of said real estate. We need draw no specific comparison, but a moment's reflection is sufficient to convince anyone that if the leasing of trust property be held to be city business in its governmental capacity, then, under the city charter and ordinances, many duties delegated to the commission could be performed only after consideration of, and vote by, the city council. The commission, thus stripped of authority, would be forestalled in the accomplishment of any useful purpose. Should its views regarding policy in management of the assets run counter to those of the city council, it could even easily become a serious detriment to the welfare of the estate. Acting in a fiduciary capacity the trustee is engaged in the business of the

estate entrusted to its care and not as a local governmental agency, hence its contracts do not require approval by the city council nor signature by the mayor other than in his capacity as a member of the trust commission.

It is clearly evident that the George W. Clayton Trust Commission was set up specifically and particularly as a separate agency for the sole and express purpose of taking over the management of said trust and keeping it separate and apart from the general governmental functions of the City and County of Denver. It is not contended that the ordinance setting up the George W. Clayton Trust Commission has ever been repealed. It was necessary that amendment be made thereto because of the change of titles of certain city officials. Section 131.1 of the revised municipal code of the City and County of Denver reads as follows:

"131. Special Commissions

"1. George W. Clayton Trust Commission.

"The Mayor, President of the Council, and the Manager of Revenue of the City and County of Denver, shall be and are hereby constituted the George W. Clayton Trust Commission, and shall perform the duties and exercise the powers thereof."

This Act was adopted in 1927; is confirmatory of the Act of 1910 which established said Commission, and is amendatory thereof only to the extent of recognizing by their new titles the officers who comprise the same.

On behalf of defendant it is asserted, and not denied by counsel representing the trustee, that heretofore, in all transactions involving the leasing of said lands by the golf club, all leases, contracts and agreements have been negotiated by and through the George W. Clayton Trust Commission, and have been executed by it in substantially the same form as is the present lease. Not only is this true with respect to the business of the defendant, but during all of the many years of the administration of the trust by said commission it has

followed the general practice of executing leases and other types of contracts in conformity with the provisions of the ordinance by which said commission was created. That it is the agency set up by the trustee for the express purpose of the management of the properties of the trust and the collection of the income therefrom, is recognized in the case of *Dunklee, Trustee v. County Court,* 106 Colo. 77, 103 P. (2d) 484.

It would seem also that under such circumstances as are detailed by this record, the trustee, considered in its municipal capacity, ought to be, and is, estopped to challenge the validity of its own ordinance. The ordinance certainly was adopted in good faith; for years it has been published as one of the laws of the municipality; people have relied thereon, as they have had the right to do, and in such reliance have entered into valuable contracts with the George W. Clayton Trust Commission as the proper and appropriate agency of the municipality in charge of the trust estate. This defendant, in reliance thereon and the integrity of the agency established thereby, has expended many thousands of dollars in the permanent improvement of the lands covered by its lease. For the city in its own behalf, at its own instance, and for its sole purpose, without any other reason whatsoever, to now deny the effect of its own law is not seemly when measured by any fair standard within the doctrine of the exercise of good faith. *Village of Deshler v. Southern Nebraska Power Co.,* 133 Neb. 778, 277 N.W. 77, 81; *City of St. Petersburg v. Atlantic Coast Line Railroad Co.,* 132 F. (2d) 675, 677.

## II.

We now come to the further contention on behalf of the trustee that the lease is void for the reason that the terms, conditions and length of time thereof were not directed or approved by the county court. Counsel first urge the point that the trustee under the terms of the will has only the powers of an executor and as such is subject to, and under the continuing jurisdic-

tion of, the county court. As to the latter the trial court so found, and we confirm that construction. The will itself so provides and specifies the extent thereof. It requires the trustee to file reports and to submit its books and records to inspection by a committee from the county court.

■ Arguing from the principle, however, that the estate is still under the jurisdiction of the county court, counsel for the trustee further contend that since the will contains no express provision authorizing the trustee to execute leases, no such power exists. The trial court found that there is such authority in the trustee clearly implied by the terms of the will itself, and with this construction we likewise are in full accord. One may not study the provisions of this will and escape the firm conviction that a trustee engaged in the proper performance of the obligations imposed upon it may do so only by directing its actions in conformity with this clearly implied duty. Where such duty appears, there exists also the further implied power and authority to perform it. *Davis v. Harrison,* 240 Fed. 97, 100.

■ Our court heretofore has recognized implied powers under a will under circumstances different from that here presented. *Clayton v. Hallett, supra; Galiger v. Armstrong,* 114 Colo. 397, 165 P. (2d) 1019. So far as we are aware, however, there is no Colorado case in which it has been determined that an executor or trustee holds implied powers to sell or lease real estate derivable from the general construction of the will itself where not specifically directed thereby. Many such decisions appear in reports of other jurisdictions. The general rule in instances where the will does not contain express powers to lease, but does give the trustee entire control, management, and charge of the estate, and directs that he shall handle all moneys and revenues therefrom in the best interest of said estate, is quite well stated in the case of *Upham v. Plankinton,* 152 Wis. 275, 140 N.W. 5, 11, wherein the court said: "The general doctrine, appli-

602

cable to the matter under discussion, is that an express power to lease given to a trustee, confers authority to make a lease for any reasonable period, considering the kind of property and the custom of the country and all the circumstances bearing on the subject. An implied power to lease growing out of the creation of a trust in real estate without power of sale, but in contemplation of its being administered to produce income, confers the same power to lease as in the first situation." In general, this same rule is announced and followed in *Russell v. Russell,* 109 Conn. 187, 145 Atl. 648, 654; *North v. Augusta Real Estate Association,* 130 Me. 254, 155 Atl. 36, 38; *St. Louis Union Trust Co. v. Van Raalte,* 214 Mo. App. 172, 259 S.W. 1067; *Hutcheson v. Bennefield,* 115 Ga. 990, 42 S.E. 422.

Counsel for trustee insist that under the statute a lease may be made by the fiduciary without court order only where the power to lease is specifically granted in the will and that such authority may not be assumed under an implied power. As authority for this contention they rely upon section 127 of chapter 176, '35 C.S.A., as of January, 1946, and prior to its amendment in 1951 (section 1, chapter 298, S.L. '51, p. 842). In their brief they urge that to construe the statute otherwise would result in it "never being necessary to give authority of court to lease, since the court itself could not authorize that action unless the trustee has power to lease either express or implied, * * *." In this construction of the statute counsel are clearly in error because the very purpose of the statute is to permit a fiduciary to enter into a lease on lands belonging to an estate where the instrument under which he holds contains no power to lease, either express or implied. The statute itself makes no such distinction between express and implied powers, and is operative in its exception where the power is implied equally as where it is expressed. The 1947 Act requires a court order "unless power to lease shall appear in the will." The 1951 Act requires a court order

"provided, however, that where a power to lease shall appear in the will, then and in that event the executor, trustee or trustees shall have the power, * * *." Neither statute differentiates between express and implied powers, and it is a general rule of law that where authority is clearly implied, it is as effective as if specifically stated.

Much attention is given in the briefs to discussion of whether the 1951 Act is procedural or substantive in effect. If it be procedural, its effect would be retroactive; otherwise not. Due to lack of clarity in the 1947 Act, it is probably true that the 1951 Act is merely amendatory thereof; hence would be classified as procedural. Here, however, we fail to see any point in this prolix controversy since we do not regard this matter as of any moment in this case, and we merely mention it in passing that counsel may be advised that it had our attention.

In accordance with our foregoing conclusions, the judgment is affirmed.

MR. JUSTICE ALTER not participating.