326 A.2d 858.

RAYMOND CONSTRUCTION CO., INC. *et al.*
*vs.* RICHARD BISBANO *et al.*

NOVEMBER 1, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

2

ROBERTS, C. J. This civil action was brought by the plaintiff, Raymond Construction Co., Inc. (Raymond), to enjoin the defendants, the town of Bristol and certain of its officers and agents,[1] from interfering with performance by Raymond of a contract with the Bristol Housing Authority to erect low-rent housing identified as "Low Rent 'Turnkey' Housing Complex designated as part of HUD No. R. I. 19-3." Raymond sought also, in the alternative, specific performance by the town of Bristol of an agreement to lease to it certain lands commonly referred to as the Byfield and Wilson lots. The defendants denied all of

---

[1] The defendants named in the action are Richard Bisbano, Acting Building Inspector of the Town of Bristol; John Faria, Anthony Rego, Arthur Langelo, Salvatore Massa, John Ligeiro, members of the Town Council of the Town of Bristol; Reynolds Northup, Town Treasurer of the Town of Bristol; the Bristol Housing Authority; the town of Bristol; and Richard Israel, Attorney General.

the allegations and joined Arthur Roderick, former president of the Town Council of the Town of Bristol, as a third-party defendant.

The matter was heard by a justice of the Superior Court, who during trial severed the third-party action for a subsequent separate trial. The parties agreed also that the issue of damages would be tried separately. The court found, in substance, that title to the Byfield and Wilson lots was in the town in trust for certain charitable uses, that is, in all of the inhabitants of the town of Bristol, and that neither the town council nor the financial town meeting possessed authority to lease or to authorize a lease of said lots. The court then held that the purported leases to Raymond of the Byfield and Wilson lots were void. From that judgment Raymond is prosecuting an appeal to this court.

It appears from the record that on April 2, 1969, the Town Council of the Town of Bristol adopted a resolution to enter into a cooperation agreement, so called, for the erection of 60 units of low-rent housing as a federal "Turnkey" project. On April 7, 1969, the town of Bristol and the Bristol Housing Authority executed a cooperation agreement, in which the town of Bristol agreed, in part, to "[c]ooperate with the Local Authority by such other lawful action or ways as the Local Government and the Local Authority may find necessary in connection with the development and administration of such Project." The 60 units of low-rent housing referred to in the cooperation agreement of April 7 are designated as "Low Rent 'Turnkey' Housing Complex designated as part of HUD No. R. I. 19-3." Thereafter, pursuant to an invitation to bid on the project, Raymond submitted proposals to the Bristol Housing Authority to erect the housing at various sites in the town of Bristol, including the Byfield land located at Mt. Hope Avenue and Third Street and the

Davis Wilson land located at Metacom and Bayview Avenues. Raymond proposed to lease the Byfield and Wilson lands from the town of Bristol, and these proposals were accepted by the Bristol Housing Authority.

The Byfield lot is a portion of land deeded in trust for the support of public education in the town of Bristol. The specific deed of trust can be found in *Town of Bristol v. Nolan*, 72 R. I. 460, 53 A.2d 466 (1947). In that decision this court held that the land was held in trust by the town of Bristol for a charitable use, that is, the support of public education in that town. The trust deed was executed in 1714 when Bristol was a part of the colony of Massachusetts Bay.

The Wilson land passed to the town of Bristol under the will of Davis Wilson about 1888. The will provides, in pertinent part, that the funds are to be invested in the name of the town in real estate, which said real estate was required to be forever rented, used or improved for the sole use and benefit of the poor inhabitants of said town and, so far as may be, of natives thereof.[2]

On December 3, 1969, Raymond requested the town

---

[2]The will reads, in part:

"That the whole of the same shall be invested under the direction of the Town Council for the time being of Bristol, in the name of the Town in Real Estate situate in said Town which said real estate shall forever be rented used or improved for the sole use and benefit of the poor inhabitants of said Town, and so far as may be of natives thereof, — it being my will and purpose in making this devise to do what I can for the comfortable support and maintenance of poor people born in and belonging to my native Town of Bristol: — The said Town Council for the time being exercising their discretion as to the time of investing such moneys or portions thereof as aforesaid, to be it that the whole shall be thus invested within five years * * *.

"But in case the devises and bequests here made to said Town shall not by said Town by a legal vote thereof be accepted within twelve months after the establishment of this will — or in case said Town shall at any time misapply or divert the property and estates aforesaid, to any other uses or purposes then as hereinbefore directed,

council to authorize the lease of the Byfield and Wilson lots to it for a term of 99 years at $1 per year. According to the decision of the trial justice, there was some dispute as to whether the council actually voted to authorize the execution of the lease of the Byfield and Wilson lands.[3] On December 5, 1969, pursuant to the resolution of the town council, the Bristol Housing Authority voted to designate Raymond as the developer of "Low Rent 'Turn-key' Housing Complex designated as part of HUD No. R. I. 19-3." Thereafter, the acting building inspector issued two building permits to Raymond, one to erect certain buildings on the Byfield land and the other to erect certain buildings on the Wilson land.

Thereafter, on November 2, 1970, the then town council president, defendant Roderick, executed two leases from the town of Bristol to Raymond, one purporting to lease to Raymond the Byfield property and the other to so lease the Wilson property. Shortly thereafter an election was held, and three new members were elected to the town council. On November 20, 1970, the town council voted to direct the assistant building inspector to revoke the building permits issued to Raymond and by resolution declared the two leases to be "null and void." Pursuant to these instructions, the building inspector by mail noti-

---

— then I give devise and bequeath all the property and estate here-inbefore devised and bequeathed to said Town to my heirs at law, their heirs and assigns forever, to be distributed according to the statute of Rhode Island regulating the descent of intestate estates."

[3]According to the evidence, the action of the town council was recorded as follows: "Upon motion of Councilman Walker, seconded by Councilman Marabello, it was Voted—Resolved that the Town Solicitor prepare a 99-year assignable lease for $1.00 per year to the Raymond Construction Company, Inc. for certain town lands located at the extension of Mount Hope and 4th Street, and Metacom Avenue, and in the event it becomes necessary for court [sic] action to be taken to fulfill the council intention, that the Town Solicitor be so authorized to take such action."

fied Raymond that the building permits had been cancelled.

As we have noted, the trial justice concluded that legal title to the Wilson and Byfield lands was in the town of Bristol in trust for certain charitable uses. He clearly held that the town council was without authority to administer the trust properties and, therefore, that the leasing of the lands to Raymond was null and void. He stated: "[T]he power remains in all the 'inhabitants' of the Town, that is in all the qualified electors meeting in one place; that is a town meeting of all the electors of the Town."

We disagree with the ruling of the trial court, which held that in the absence of specific authorization by the townspeople, a municipal corporation cannot manage or administer trust property through its officers or agents. It is our opinion that the trial justice, in so holding, either overlooked or misconceived the thrust of G. L. 1956 (1970 Reenactment) §45-2-4, which provides: "Towns may take, purchase and hold real and personal estate, and alienate and convey the same; and may also take, hold and manage the same in trust for any charitable, other than religious uses, and may make all contracts necessary and convenient for the transaction of the business of the town."

Section 45-2-4 confers upon municipal corporations broad authority not only to take and hold property in trust for charitable uses but also to manage or administer such trust properties pursuant to the terms of the trust. In construing a statute, it is permissible to consider the reasonableness of the result of a particular interpretation. *Braman* v. *Wawaloam Reservation, Inc.*, 107 R. I. 270, 267 A.2d 410 (1970). To construe §45-2-4 as requiring a municipal trustee to administer a trust by vote of the townspeople on each question of management is to preclude effective administration of trust property by the town. Such an interpretation would vitiate the purpose

of §45-2-4, which was to enable towns to hold and manage trust property, and thus should be rejected.

In *Blais* v. *Franklin*, 31 R. I. 95, 106, 77 A. 172, 177 (1910), this court adopted the rule of statutory construction that a statute should be understood to contain by implication "* * * all such provisions as may be necessary to effectuate its object and purpose * * *." In accordance with this rule, we conclude that in enacting §45-2-4 the Legislature intended quite clearly to give municipal corporations the same power to administer with facility property held in trust for charitable uses as that possessed by private corporations, subject, of course, to the terms of the trust. It follows by implication that this statutory provision empowers municipal corporations to manage the corpus of a trust through their appropriate agents and officers.

Serving as the elected representative of the residents of a town, the town council should be deemed the appropriate agent of the municipal corporation to administer such trusts. Clearly, the town council has the power to function in such a capacity. *See* G. L. 1956 (1970 Reenactment) §45-5-1. Consequently, we hold that in the absence of express intent of the settlor to the contrary, it will be presumed that the settlor of a charitable trust of which a municipality is appointed trustee intended the town council to act as the trustee's agent for purposes of trust administration.

The settlor of the Wilson trust directed the Town Council of Bristol "for the time being" to invest the funds, transferred by the trust deed, in certain real estate for specified charitable purposes. The council had to complete the task of initial investment within five years of the creation of the trust to prevent a reversion of the trust res to the settlor's heirs. It appears that the settlor intended the town of Bristol to hold and manage the trust

8

property once these funds were invested. Under the terms of the Byfield trust, the municipality was to serve as trustee. Given the absence in either trust instrument of language suggesting that some person or organization other than the Bristol Town Council should serve as trustee, we hold that the town council has the authority to act as the trustee in accordance with the terms of each trust.

Since the town council had the authority properly to deal with the trust property on behalf of the town, it would be authorized to lease real estate held in trust provided such action would serve to carry out the purposes of the trust. *City & County of Denver* v. *Park Hill Golf Club,* 127 Colo. 592, 259 P.2d 617 (1953); *John Wright & Associates, Inc.* v. *City of Red Wing,* 259 Minn. 111, 106 N.W.2d 205 (1960).[4] Thus, if the record in this case established that the town council authorized the execution of the leases of lands to Raymond and they were executed, then the town of Bristol would be liable to Raymond in accordance with the terms of those leases. From an examination of the record, however, we have concluded that the trial court made insufficient findings of fact for this court to determine whether the Bristol Town Council authorized the execution of the two lease agreements. Consequently, the record is too incomplete to support a decision on the issue of the town's liability under these contractual agreements.

In his decision, the trial justice stated that the parties were in dispute as to whether the Bristol Town Council authorized the execution of the two lease agreements. He made no finding of fact on this issue. As an appellate court, we will not attempt to resolve factual disputes by

---

[4] We do not at this time pass on the question of whether the leasing of either of the trust properties to Raymond for the purpose of building low-rent housing would serve to carry out the purposes of the trust.

weighing the credibility of witnesses who provide inconsistent testimony. Consequently, unless an evidentiary presumption is available to assist us in determining whether the execution of the leases had been authorized by the town council, it will be necessary to remand the instant case for further findings of fact on this question.

The minutes of certain meetings of the Bristol Town Council were admitted into evidence in the Superior Court. These minutes do, in fact, suggest that the town council authorized the preparation of certain lease agreements; if these records are *mere* evidence of the facts reported in them, this court will not conclude that such facts provide the basis for a legal conclusion as to the town's liability, since to do so would be to make a finding of fact. Furthermore, even if this court were to assume that the minutes constituted *conclusive* or *prima facie evidence* of the facts stated therein, a question which we do not now decide, they provide the court with no clear factual determination of whether the council authorized the execution of the two leases in question.

Assuming for purposes of analysis that the minutes are *prima facie* or *conclusive* evidence of the facts therein reported, one is not foreclosed thereby from introducing extrinsic evidence to complete or clarify a statement included in the minutes which is incomplete or ambiguous on its face. *See Supreme Woodworking Co.* v. *Zuckerberg,* 82 R. I. 247, 107 A.2d 287 (1954). According to the minutes of the meeting of the Bristol Town Council on December 3, 1969, the council resolved that the town solicitor "* * * prepare a 99-year assignable lease for $1.00 per year to the Raymond Construction Company, Inc. * * *" for the Wilson and Byfield lands. In addition, these minutes indicate that the council decided that "* * * in the event it [became] necessary for court [sic] action to be taken to fulfill the council intention * * * that the

Town Solicitor [should] be so authorized to take such action." Because of the ambiguous meaning of "court [sic] action * * * to fulfill the council intention," the minutes do not clearly indicate whether the council authorized execution of the leases. The "council intention" may have been to have the town solicitor arrange and ensure the completion of the execution of the leases once the necessary documents were prepared. Alternatively, the solicitor may have been authorized solely to *prepare* all necessary documents. Clearly, the admission of extrinsic evidence is necessary to provide a basis for resolving the ambiguity.

Without such clarification of these facts, we are unable to determine the dispositive question in this case, whether the town of Bristol, *ab initio,* was bound by the terms of the lease agreements. Consequently, we are of the opinion that the case should be remitted to the Superior Court for factual findings on the question of whether execution of the leases of property to Raymond had been authorized by the town council.

The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*Ralph C. DeLuca, Swan, Keeney, Jenckes & Asquith, Conrad M. Cutcliffe, Edward W. Moses,* for plaintiff.

*Richard B. Tucker,* Rhode Island Legal Services, Inc., for intervening plaintiffs.

*Emilio D. Iannuccillo,* for Town of Bristol; *Anthony R. Berretto,* for Bristol Housing Authority, defendants.